**SCHMIDT v. ESQUIRE, Inc.**

**SCHMIDT**

v.

**READER'S DIGEST ASS'N, Inc.**

**SCHMIDT**

v.

**CROWELL-COLLIER PUB. CO.**

Nos. 10906, 10907, 10908.

United States Court of Appeals,
Seventh Circuit.

Feb. 24, 1954.

Jay E. Darlington, Hammond, Ind., for appellant.

Le Roy R. Krein, Chicago, Ill., Charles G. Bomberger, Hammond, Ind., Thomas L. Marshall, Charles T. Martin, Chicago, Ill. (Arvey, Hodes & Mantynband, Chicago, Ill., Bomberger, Morthland & Royce, Hammond, Ind., of counsel), for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

These cases, three in number, are closely related in subject matter, and we are combining their disposition into a single opinion. The appeal in each case is from an order of the District Court dismissing the complaint which attempted to allege a stockholder's derivative action for libel. The plaintiff in each case is George Schmidt, a resident of Illinois. He filed suits on behalf of the Tucker Corporation, organized under the laws of Delaware, against The Crowell-Collier Publishing Company, a Delaware corporation; The Reader's Digest Association, Inc., a New York corporation; and Esquire, Inc., a Delaware corporation.

The actions were commenced in the Circuit Court of Lake County, Indiana, and from there were removed, on the motions of the defendants, to the United States District Court for the Northern District of Indiana. The plaintiff filed motions to remand in the Crowell-Collier and Esquire cases on the ground that there was no diversity, but these motions were denied. The Tucker Corporation was served with process in each case by service upon its Executive Vice Presi-dent, but it has entered no appearance of any kind.

The complaints are substantially identical. In substance they allege the following: The plaintiff is the owner of 1,000 shares of capital stock of the Tucker Corporation. This company was organized to manufacture and sell a radically new, rear-engined automobile. A large plant was leased and equipped with machinery for the mass production of this car, and several million dollars were spent on engineering, development and nation-wide advertising. In March of 1949 the United States District Court for the Northern District of Illinois, finding that the company was unable to pay its debts as they matured, approved a petition for reorganization of the corporation under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Trustees were duly appointed to take charge of the assets and manage the affairs of the corporation. Subsequently during the year 1949, there appeared in Collier's, The Reader's Digest and Coronet magazines, articles regarding the Tucker Corporation and its activities. These articles conveyed to the reading public the idea that the corporation's management in the conduct of its business had been guilty of fraud, corruption and crime; that the company's product was ridiculous in character, unworkable, and tainted and characterized by fraud; and that the corporation had failed in its purpose and was unfit for business patronage or financial credit. Such representations were false and libelous, and, as a result of them, the company's business was injured, its goodwill was destroyed, and its product was held up to contempt and ridicule. The company has, therefore, been unable to obtain credit, to raise new capital, or to reorganize and proceed with the manufacture and sale of its product. The proceedings under Chapter X of the Bankruptcy Act are still pending, no reorganization plan has been approved, and there is little likelihood that one will be. The surviving trustee, meanwhile, has made no attempt to schedule or to enforce these

causes of action for libel as an asset of the estate. In February of 1951 the plaintiff's attorney, on behalf of stockholders of the corporation, stated to the officially appointed and authorized counsel for the trustee that he considered this cause of action to be meritorious and of value to the corporation. He reminded counsel for the trustee that the period of limitation was about to expire, and requested that he, the counsel for the trustee, prosecute the action before it became outlawed. In response, "counsel for the trustee stated in substance that he had been considering this matter and had reached the conclusion that he would not do so, and that he considered this cause of action to be non-existent and not an asset of the corporation estate." Thereafter, on February 23, 1951, the plaintiff's attorney, by letter, notified counsel for the trustee that he intended to file this stockholder's suit on the cause of action for libel, "as an asset which had been abandoned in fact and law by the trustee and which had thereby reverted to the corporation," and he asked to be notified to the contrary if this were not the position of the trustee and of the court in charge of the reorganization proceeding. Copies of this letter were sent to the trustee and to the court for their information and notice. Both the trustee and the court remained silent, "thereby acquiescing in and ratifying said abandonment of this cause of action to the corporation." On February 24, 1951, the plaintiff's attorney, by letter, notified the corporation's president, three vice-presidents, and a majority of the board of directors of the cause of action for libel and its abandonment as an asset of the estate, and he demanded that they cause the corporation to sue on the cause before it became outlawed. They have taken no action in the matter, and as the plaintiff is informed and believes, the corporate management and board of directors are incapable of taking any action, "because of the fact that they are widely scattered and have not met for a long time and are not likely to meet for the conduct of this or other corporate affairs,

due to the aforesaid destruction of the corporation's business." The plaintiff has exhausted all other means to have this action filed before it becomes lost to the corporation. Accordingly, it was necessary that this stockholder's suit be filed in order to preserve the cause of action. Since it was not possible to have the corporation join as a party plaintiff for the reasons stated, "it has been named as a formal defendant." However, the only relief sought with respect to the corporation is the preservation and enforcement of the cause of action for libel.

The day after these complaints were filed in the Circuit Court of Lake County, Indiana, the plaintiff filed identical actions in the Superior Court of Cook County, Illinois. In the latter court the Reader's Digest case is still pending, the suit against Esquire was dismissed by stipulation of both sides without prejudice, and the Crowell-Collier case was ordered dismissed with prejudice. This latter order was affirmed by the Illinois Appellate Court, Schmidt v. Crowell-Collier Publishing Co., 349 Ill.App. 229, 110 N.E.2d 464. In the view which we take of the cases before us, we need not consider whether the Illinois judgment in the Crowell-Collier case should be considered *res adjudicata*.

The Crowell-Collier case was dismissed by the District Court because the action was not authorized by the court having charge of the Chapter X proceedings. This was held to be essential since, in the view of the District Court, the complaint did not contain allegations sufficient to show an abandonment of the cause of action by the trustee. In the Reader's Digest and Esquire cases, the complaints were dismissed on the ground that the court had no jurisdiction over those corporations for the reason that they were not doing business in Indiana and were not, therefore, amenable to suit there.

We consider first the rulings of the District Court in the Crowell-Collier case, and we conclude that they were correct. The plaintiff's motion to remand was based principally on the theory that, although the Tucker Corporation was

named as a defendant in the complaint, for the purpose of testing diversity jurisdiction it should have been realigned as a plaintiff in accordance with its actual interest in the controversy. Thus, diversity would have been destroyed by the presence of a Delaware corporation on each side of the case. We note that in stockholders' derivative actions it has not been the practice to realign the corporation as a plaintiff, although the action is one to enforce a corporate claim and any recovery is for the benefit of the corporation. Koster v. (American) Lumbermens Mutual Cas. Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067; Meyer v. Fleming, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595; Venner v. Great Northern Railway Co., 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666; Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606; Lavin v. Lavin, 2 Cir., 182 F.2d 870, 18 A.L.R.2d 1017. The corporation is left a defendant on the theory that it is controlled by antagonistic hands. Koster v. (American) Lumbermens Mutual Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067. It does not seem that a different rule of alignment applies when, as in this case, there is no indication that the refusal by the corporate management to sue results from fraudulent or other improper motives. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Delaware & Hud. Co. v. Albany & Susquehanna R. Co., 213 U.S. 435 29 S.Ct. 540, 53 L.Ed. 862. City of Chicago v. Mills, 204 U.S. 321, 27 S.Ct. 286, 51 L.Ed. 504. Cf. Groel v. United Electric Co., C.C., 132 F. 252. However, we need not consider further the plaintiff's theory of alignment, for we think the District Court ruled correctly that under the circumstances of this case the citizenship of the Tucker Corporation is immaterial for the purpose of testing diversity.

 Ordinarily, it is true, the corporation is an indispensable party to a stockholder's derivative action, since the claim asserted belongs to the corporation and any judgment rendered must conclude the corporation. Price v. Gurney, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776; City of Davenport v. Dows, 18 Wall. 626, 627, 21 L.Ed. 938; Greenberg v. Gianinni, 2 Cir., 140 F.2d 550, 554, 152 A.L.R. 966. However, upon adjudication in bankruptcy or approval of a petition for reorganization under Chapter X, property of the debtor vests in the trustee and is thereafter subject to the exclusive jurisdiction of the Bankruptcy Court. 11 U.S.C.A. §§ 110, 586; Isaacs v. Hobbs Tie and Timber Co., 282 U.S. 734, 51 S. Ct. 270, 75 L.Ed. 645; Gochenour v. Cleveland Terminals Bldg. Co., 6 Cir., 118 F.2d 89; Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658. The District Court in this Chapter X proceeding, in the order approving the petition for reorganization and appointing trustees of the estate of the Tucker Corporation, therefore, properly directed the trustees to institute and prosecute such actions as in their judgment might be necessary for the "protection, maintenance and preservation of the property and assets" of the corporation. It may be noted that since the alleged libels here involved occurred subsequent to the appointment of the trustees, the causes of action were never owned by the Tucker Corporation but were vested in the trustees immediately upon the publication of the libels. But in whatever manner particular assets may pass to the trustee, the bankruptcy court "has exclusive authority to determine how causes of action which have become a part of the bankruptcy estate shall be enforced." Meyer v. Fleming, 327 U.S. 161, 169, 66 S.Ct. 382, 387, 90 L.Ed. 595. The Supreme Court in Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815, applied these principles of law where the corporation in whose behalf the claim was asserted was in receivership, an analogous situation. After referring to the ordinary rule that the corporation necessarily is a party to a stockholder's derivative action, the court stated, 149 U.S. at page 478, 13 S.Ct. at page 1010: "If the corporation becomes insolvent, and a receiver of all its estate and effects

is appointed by a court of competent jurisdiction, the right to enforce this, and all other rights of property of the corporation, vests in the receiver; and he is the proper party to bring suit, and, if he does not himself sue, should properly be made a defendant to any suit by stockholders in the right of the corporation." See Coyle v. Skirvin, 10 Cir., 124 F.2d 934; Klein v. Peter, 8 Cir., 284 F. 797, 29 A.L.R. 1497.

So in this case the cause of action for libel, assuming such a claim existed, was owned not by the Tucker Corporation but rather by the trustee, subject to the exclusive control of the court in which the Chapter X proceedings had been filed. Any judgment respecting such a claim, to be final and binding, necessarily would have to conclude the trustee. Under these circumstances, we think the corporation could rightly be disregarded as a party to the suit. Its citizenship was not, therefore, relevant to the question of diversity jurisdiction.

But in this case the complaint stated no claim upon which relief could be granted. As we have already shown, the power to authorize the filing and prosecution of this cause of action was exclusive with the reorganization court, and the responsibility for its prosecution lay with the trustee. Upon the refusal of the trustee to act, the plaintiff could have petitioned the reorganization court to compel the trustee to bring suit or to authorize the plaintiff to sue, naming the trustee as a defendant. Without such authorization the plaintiff stockholder may not maintain this derivative action. Meyer v. Fleming, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595; Glenny v. Langdon, 98 U.S. 20, 25 L.Ed. 43; Zeleznik v. Grand Riviera Theater Co., 6 Cir., 128 F.2d 533; Gochenour v. Cleveland Terminals Building Co., 6 Cir., 118 F.2d 89.

The contention that here the trustee had in fact abandoned the cause of action, with the result that title to the asset was revested in the corporation, is without merit. It is true, as a general principle of law, that a trustee in bankruptcy may abandon onerous or unprofitable assets. Dushane v. Beall, 161 U.S. 513, 16 S.Ct. 637, 40 L.Ed. 791; In re Thomas, 7 Cir., 204 F.2d 788; In re Malcom, D.C., 48 F.Supp. 675. It is likewise certain that title to abandoned assets thereupon revests in the bankrupt. Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827; In re Webb, 4 Cir., 54 F.2d 1065. It is not so certain just what action by the trustee is necessary to constitute an abandonment. There is no universally applied formula which he is required to follow, and whether abandonment has occurred in a particular case is usually a question of fact. Stanolind Oil & Gas Co. v. Logan, 5 Cir., 92 F.2d 28. The trustee may expressly declare his intent to abandon, Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609, while in some cases a mere failure by the trustee to administer property of which he has knowledge has been held sufficient. Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28. See Judge Lindley's extensive discussion in In re Malcom, D.C., 48 F.Supp. 675.

It is generally assumed that an order of the bankruptcy court is not requisite to the abandonment of property by the trustee. However, it is essential to recognize that it is the court which administers the estate through its officer, the trustee, who is always subject to the court's control. The authority of the court is paramount and exclusive; it "has the final word." In re Humeston, 2 Cir., 83 F.2d 187, 188. General Order 56 of the General Orders in Bankruptcy states that "each court of bankruptcy * * * may from time to time make and amend rules governing its practice in proceedings under the Act * * *." 11 U.S.C.A. following section 53. A rule of the bankruptcy court so authorized and adopted has the force of law. Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243; Rio Grande Irrigation & Colonization Co. v. Gildersleeve, 174 U.S. 603, 19 S.Ct. 761, 43 L.Ed. 1103; In re G. W. Giannini, Inc., 2 Cir., 90 F.2d

445, 111 A.L.R. 1492; Cf. Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 44 S.Ct. 220, 68 L.Ed. 480. The District Court for the Northern District of Illinois has adopted a rule, Bankruptcy Rule 19, which provides, in part: "The trustee may, *upon approval by the court,* abandon any property of the bankrupt if burdensome or of no net realizable value." (Our emphasis.) The Bankruptcy Court, in the exercise of its paramount authority, could adopt this rule as a governing requirement in the administration of bankruptcy matters in that court. Thus, we think it clear, in the instant case, that the trustee could not abandon the claim for libel without securing the court's approval.

But the plaintiff contends that the requiring of a formal petition, notice, and hearing in order to secure the approval of the court for the abandonment of assets in a bankruptcy matter would unduly hinder the practical administration of the assets, and he suggests that Rule 19 merely contemplates that the trustee will act generally within the scope of his authority and with the informal approval of the court.

The plaintiff relies heavily on the opinion of Judge Lindley in In re Malcom, D.C., 48 F.Supp. 675, 679, which referred to abandonment after notice and hearing as being the "better practice," but held that the abandonment in that case was completed without such a notice and hearing. But in that case Judge Lindley was considering an abandonment of assets in a bankruptcy matter ten years after the estate had been closed. There the assets in question were investigated by the trustee and found to be encumbered for more than their value. The trustee, therefore, never took possession of those assets nor administered on them and the question arose in a proceeding to reopen the bankruptcy in order to remove an alleged cloud on the title of the then owner, which was alleged to exist because of the fact that there had been no petition and hearing concerning their abandonment.

In view of the law which we have set out above, it is clear that in a bankruptcy proceeding in the Northern District of Illinois, where this proceeding was pending, the trustee could abandon an asset of the debtor only with the approval of the court, and we cannot agree with the plaintiff's contention that the court ratified the abandonment of these causes of action to the debtor corporation by the trustee, by merely remaining silent after receiving copies of the letter which plaintiff had written to an attorney for the trustee stating that plaintiff intended to file these derivative actions on the theory that they were assets which the trustee had "abandoned in fact and in law," and in which letter the plaintiff asked "to be notified to the contrary if such was not the position of the trustee and the court having charge of said reorganization proceeding."

The court in which this bankruptcy proceeding was pending was, of course, a court of record. It acts only through its orders which are made of record. It could approve the abandonment of these causes of action only by an order duly entered. Since no such order was entered the court did not approve the abandonment. Schmidt v. Crowell-Collier Publishing Co., 349 Ill.App. 229, 234, 110 N.E.2d 464.

Our conclusions in the Crowell-Collier case resolve the question of diversity in the Esquire case. No question of diversity was raised in the Reader's Digest case. The remaining question in the Reader's Digest and Esquire cases is whether those complaints were rightly dismissed for lack of personal jurisdiction. We conclude that they were.

The plaintiff attempted to obtain service of process upon The Reader's Digest Association, Inc., and Esquire, Inc., by serving the Secretary of State of Indiana, in accordance with Burns' Ind.Stats. Ann. § 25–316 (1948 Repl.). That statute provides, in part: "The engaging in any transaction or the doing of any business in this state by any foreign corporation not licensed nor admitted to do business in this state * * * shall be

deemed equivalent to an appointment by such foreign corporation of the secretary of state * * * to be the true and lawful attorney and agent of such foreign corporation upon whom may be served all lawful processes * * * in any action or proceeding against such foreign corporation arising or growing out of, directly or indirectly, any act or thing done by such corporation within the state of Indiana."

With respect, first, to the Reader's Digest case, affidavits considered by the District Court reveal the following pertinent information: The Reader's Digest Association, Inc., is a corporation foreign to the State of Indiana, and it is not licensed nor admitted to do business there. The Reader's Digest magazine is printed and published outside the state, and is sent to Indiana subscribers by mail. Newsstands and stores in Indiana which sell the magazine purchase their copies from local wholesalers, whose copies are obtained from a New York wholesaling corporation to which Reader's Digest sells its entire store and newsstand supply. Reader's Digest has no office in Indiana of any kind. It does, at times, solicit through its magazine so-called "community representatives" to obtain subscriptions. The advertisement urges the reader to supplement his regular income through liberal commissions easily obtained by acting as a community representative in his spare time. Anyone answering the advertisement is sent the materials necessary to solicit subscriptions, including an order book. The solicitor collects the price of the subscription and remits this to the defendant in New York after deducting his commission. He is furnished "Subscribers' Receipt" forms with spaces for the subscriber's name, the amount paid, and his signature as "Representative." He is also furnished with "Correction" forms for recording complaints, changes of address, and the like.

It is not contended that Reader's Digest was doing business in Indiana through the store and newsstand sales of its magazine, nor through the mailing of its magazine to Indiana subscribers. It is only the activity of the so-called community representatives which, it is said, constitutes such "doing business" as to make Reader's Digest amenable to service of process in Indiana.

■ Considerable reliance is placed on the doctrine of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, which concerned the question of how much activity by a foreign corporation in a state is necessary to give that state the right to subject the foreign corporation to suit in the courts of that state without violating the due process clause of the Constitution. However, we think it is well to point out that the initial question in a case such as the instant one is not whether Indiana could, consistent with due process, assert jurisdiction over Reader's Digest. Rather, the question we should first consider is whether Indiana has chosen to assert jurisdiction under circumstances such as are present in this case. Only if the second point is answered affirmatively is there occasion to consider the first. This is so for the reason that Indiana may not choose to "extend to suitors access to its courts against foreign corporations as amply as it has power to do under the Constitution." Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33, 35. See also Partins v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541, 544; Rosenthal v. Frankfort Distillers Corp., 5 Cir., 193 F.2d 137; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193.

■ Following this approach, we would first decide whether the Indiana statute, passed in 1939, contemplates service on foreign corporations under circumstances such as we have in this case. The Supreme Court of Indiana had earlier held, consistently with the established rule, that mere solicitation of business in the state by an agent did not subject a foreign corporation to local jurisdiction. Mutual Mfg. Co. v. Alspaugh, 174 Ind. 381, 91 N.E. 504, 92 N.E. 113. See Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Green v. Chicago, B. & Q.

R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916. We have not been cited to, nor have we found, any reported decisions of the Indiana courts construing the statute involved in the instant case. However, we do not think it necessary to decide whether or not the Indiana statute is as broad as the International Shoe doctrine would permit. Whether the question is one of due process, or state law, we think the District Court correctly decided the question on the principles announced in Cannon v. Time, Inc., 4 Cir., 115 F.2d 423. In that case the foreign corporation, Time, Inc., delivered its magazines to the Richmond News Company, the local branch of a wholesaling concern, which in turn sold to local newsstands and stores. In addition, the Richmond News Company solicited and collected for subscriptions, and based upon this activity was the contention that Time was doing such business in the state as to be subject to local jurisdiction. The court held, however, that the News Company was an independent contractor doing business for its own account and not as an agent of Time. Therefore, Time was not doing business within the state and was not amenable to suit there.

We can see little difference in principle between that situation and the one which confronts us here. There are factual distinctions, it is true, but we do not think they are decisive. The Reader's Digest community representatives are under no supervision, direction or control, they conform to no prearranged schedule or routine, they may solicit or not as it suits their opportunity or inclination. Certainly, they are not agents of Reader's Digest within the meaning of all that term implies. They are urged by the defendant to work in their spare time, for their own account, to supplement their income. We think it is inescapable that they be considered as occupying the position of independent contractors.

The question of personal jurisdiction in the Esquire case may be quickly disposed of. Affidavits filed with the District Court disclose the following: Esquire, Inc., is a corporation foreign to the State of Indiana and is not licensed nor admitted to do business there. It publishes the Esquire and Coronet magazines, which are available in Indiana either through subscription or at the newsstand. These magazines are printed in Chicago and are mailed directly from there to Indiana subscribers. They are placed on newsstands in Indiana by the Curtis Circulation Company, an independent corporation which purchases the magazines from Esquire and effects distribution through independent wholesale organizations. Esquire has no office of any kind in Indiana, and it has no employees or agents there to gather material for publication, nor to solicit advertising, subscriptions or newsstand sales.

Under these facts, we do not see how it can seriously be contended that Esquire was amenable to suit in Indiana. In the Reader's Digest case the plaintiff concedes, as well he must, that something more than this is required to give local jurisdiction. Cannon v. Time, Inc., 4 Cir., 115 F.2d 423; Whitaker v. Macfadden Publications, 70 App.D.C. 165, 105 F.2d 44. Obviously, the necessary contacts with the state are absent here.

The plaintiff's attack on the affidavits filed by Reader's Digest and Esquire is without merit. We think they were sufficient, together with the facts shown by the plaintiff's affidavit, to sustain the action of the District Court.

In the view which we have taken of these cases, it is not necessary that we consider any of the other questions raised by the parties.

The judgment of the District Court in each of the three cases is

Affirmed.