229 F.2d 158
 J. C. SCHUTT, Administrator of the Estate of John P. Bell, deceased, Jane Bell, Frances Bell Ebling, and Margaret Bell Douglas, residents of Davidson County, Tennessee, Plaintiffs-Appellants,
v.
The COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION OF AMERICA, a corporation organized under the laws of the State of New York, with its home office in Utica, New York, Defendant-Appellee.
 No. 147.
 Docket 23371.
 United States Court of Appeals Second Circuit.
 Argued December 20, 1955.
 Decided January 17, 1956.
 
 Kernan & Kernan, Utica, N. Y. (Willis D. Morgan and Bruce C. McLean, Utica, N. Y., of counsel), for plaintiffs-appellants.
 Hubbard, Felt & Fuller, Utica, N. Y., for defendant-appellee.
 Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.
 MEDINA, Circuit Judge.
 Plaintiffs are the beneficiaries named in an accident policy of insurance and the legal representative of the assured, John P. Bell, who lost his life in a fire which destroyed his home in Davidson County, Tennessee, on October 8, 1950. They appeal from a judgment dismissing their second cause of action, based upon a Tennessee state court judgment, which the court below held not entitled to full faith and credit for lack of jurisdiction.
 Where a defendant plainly receives adequate notice and is afforded a reasonable opportunity to defend, the requirement of physical presence in the state has been whittled down until it is now frankly recognized that state statutes which provide for substituted service against non-residents and foreign corporations will support judgments in personam, which are entitled to full faith and credit, providing their exist "certain minimum contacts" within the territory of the forum, and these must be of such a character "that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95.
 The background is the mushroom growth of the mail order insurance business. Typically such companies maintain an office and own property only in the state where they are incorporated, but they insure risks in many states, sometimes on a nation-wide basis. They have no agents or solicitors. New business is secured through the efforts of old policy-holders, or "members," spurred on by offers of prizes and aided by advertisements and application blanks furnished by the company. The amounts of money involved are small, full coverage of $5,000 or $10,000, the various sums of accident, hospital and health coverage running from a few dollars up to a few thousand. Some of these details appear in the exhibits attached to the affidavits in this case. In any event, such has been the success of these companies and so clear is the hardship of requiring the assured or his beneficiaries to hire a lawyer to prosecute such small claims in a state far from the residence of the policy-holder, where the necessary witnesses are generally to be found, that several states have enacted legislation to protect their residents against the expense, inconvenience, and injustice which are found to exist where such claims are required to be prosecuted in far distant forums.[1]
 
 
 1
 We are concerned here with a statute of the Tennessee Code, Sections 6459.48, 6459.49, 6459.51 and 6459.53, Chapter 119 of the Public Acts of Tennessee of 1947, hereinafter discussed.
 
 
 2
 The defendant, a New York membership corporation, had no property, office or employees in Tennessee. The policy was issued to the deceased in 1942, when he resided in Winchester, Kentucky. According to the terms of the contract, it is agreed that it "is for all purposes deemed to be executed, issued and delivered within * * * the State of New York." Prior to 1947 the decedent moved to Tennessee, where he was domiciled at the time of his death. The activities of defendant in Tennessee were: the usual solicitation of new business by "members," with prizes, advertising matter and application blanks; notices of assessments or premiums due, sent regularly through the mails to decedent and to other policy-holders and received by him and by others at their Tennessee homes; acceptance of remittances for assessments or premiums mailed in Tennessee; and the mailing of proofs of loss in Tennessee and the presence of an investigator of defendant on the premises after the fire.
 
 
 3
 Service of process in the Tennessee state case was made on the Commissioner of Insurance, who forwarded the papers promptly to defendant in Utica, New York. But defendant took the position that it had never transacted any business in Tennessee, had no representatives there and had never designated the Commissioner of Insurance to accept service in its behalf. A decree pro confesso followed in due course, and it included, in accordance with Tennessee law,[2] "additional costs and expenses in the sum of $2500.00 arising directly out of defendant's refusal in bad faith to pay its obligation under said policy."
 
 
 4
 The court below, citing Parmalee v. Iowa State Traveling Men's Association, 5 Cir., 206 F.2d 518, 519, 44 A.L.R. 2d 410 and Parmalee v. Commercial Travelers, 5 Cir., 206 F.2d 523, held that it was not necessary to consider the constitutional questions of due process and full faith and credit, as it construed the Tennessee statute as having no application "to a certificate of insurance delivered outside the State, and prior to the passage of the statute."
 
 
 5
 Did the court below construe the statute correctly? We think not. The two Parmalee cases are not in point as the Florida statute there involved, F.S.A. § 625.29, showed on its face that it was only applicable to "policies of insurance issued or delivered" in the State of Florida. Naturally, had the Tennessee statute with which we are now concerned stated that the procedure set forth should be available only where the policy had been issued or delivered in the State of Tennessee, substituted service would not have been available in an action to recover on a policy delivered in Kentucky.
 
 
 6
 Nor is there anything in the text of Chapter 119 of the Laws of 1947 to indicate that the benefits to be derived from its provisions with respect to substituted service are reserved for those to whom policies were delivered in Tennessee after the enactment of the statute. These salutary laws have nothing to do with the substantive law which governs liability under the policies. Indeed, it is not disputed that plaintiff's cause of action arose in Tennessee. The natural inference is that this new mode of substituted service of process is to be available immediately upon the enactment of the new law, for the benefit of anyone who wishes to bring suit in a local state court against a foreign insurance company doing business in the state within the definition of the statute.
 
 
 7
 In view of the background against which this and similar state statutes were passed, as above stated, it would seem apparent that a broad and liberal interpretation, consistent with the terms of the statute, should be adopted in order that Tennessee residents, holding such policies, may not be forced to pursue their remedies in far distant states.
 
 
 8
 Construing together all the sections of the statute, as we must, it is clear to us that the intention of the legislature was to authorize substituted service on whatever foundation of activities within the state might be deemed by the Supreme Court to be the minimum consistent with standards of due process.
 
 
 9
 Thus, after describing a Foreign Insurance Company, Section 6459.49 defines "What constitutes doing business" as "the doing in this state by such company of any act whatsoever, whether interstate or intrastate in nature, including the soliciting, making, or delivering of insurance contracts in Tennessee, by agent, mail or otherwise."
 
 
 10
 Certainly the mailing of the premium notices and the remittance of premium payments and the submission of proofs of death constitute "the doing of any act whatsoever, whether interstate or intrastate in nature." The company is at one end or the other of each of these activities, which go in both directions, and one end is in New York and the other end in Tennessee. Moreover, prior to the commencement of the action, defendant's investigator and his duly authorized assistants were functioning in Tennessee.
 
 
 11
 Section 6459.51 provides that "by doing such business", as just above defined, the company is deemed to have appointed the Commissioner of Insurance its agent "for the purposes hereinafter set forth." And in Section 6459.53 these "purposes" are explained as relating to service of process "in any action or proceeding against it growing out of such business."
 
 
 12
 "Such business" includes of course the doing of "any act whatsoever", and this is the demand for and the receipt of premiums, which serve to keep the policy in full force and effect, and such other activities as relate to proofs of loss, investigation of the claim and so on, as preliminaries to the fixing of liability. It is no fiction to say that the lawsuit "grows out" of these activities, for without them there would be no basis whatever for bringing the suit. Indeed, we are frank to say that an interpretation which excludes from the operation of the statute all policy-holders who received their certificates in Tennessee or elsewhere prior to 1947, and all those who received them after 1947, but before taking up a domicile in Tennessee, would seem to have no relationship to the phrase "growing out of such business" nor to the purposes for which the legislation was passed.
 
 
 13
 The constitutional question is more difficult of solution. At least we may pass over the early cases, many of which are cited and relied upon by defendant, but which have long since been displaced.
 
 
 14
 It seems to us that the authority of Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L. Ed. 573, strongly relied upon by defendant, has been impaired almost to the vanishing point by Travelers Health Ass'n v. Commonwealth of Virginia, ex rel. State Corp. Comm., 339 U.S. 643, 70 S. Ct. 927, 94 L.Ed. 1154, where Mr. Justice Black's opinion finds significant support in Mr. Chief Justice Stone's reasoning in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, from which we have already quoted.
 
 
 15
 Perhaps in the end vestiges of the old "physical presence" theory will prevail. However that may be, we agree with and will follow the opinions of the court in the International Shoe Co. and Travelers Health Ass'n cases, to which reference has already been made. See also Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782.
 
 
 16
 Few if any activities within a state touch the people so closely as do those of insurance companies. Here the defendant has hit upon a way of transacting its business which reduces its contacts with its policy-holders and its methods of obtaining new business to communications by mail. But the result is precisely what it would have been if salesmen rather than "members" procured new customers and if agents went from house to house collecting premiums instead of the sending of notices and receiving remittances through the mail. And this is done year after year on a large scale, in a systematic and regular way. Doubtless large numbers of policies are issued in due course to residents of Tennessee each year, and these are administered and processed in due course, in addition to those already held by others. If there is any doubt about the extent of defendant's mail order insurance business in Tennessee, plaintiffs should be afforded opportunity to amplify the proofs appearing in plaintiffs' affidavits, which were submitted in opposition to a motion to dismiss, which was treated by the court as a motion for summary judgment, and granted.
 
 
 17
 We think a fair balancing of the inconveniences discloses a situation which is unduly burdensome and in a high degree unjust to the holders of defendant's policies and that consequently the legislation in question does not run counter to the due process clause of the Constitution.
 
 
 18
 Nor do we find any merit in defendant's other contention, that the legislation is unconstitutional as an improper attempt to regulate the use of the United States mail. Travelers Health Ass'n v. Commonwealth of Virginia ex rel. State Corp. Comm., supra.
 
 
 19
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 See Note, 39 Va.L.Rev. 966 (1953), where the statutes are collected and the problem of mail order insurance discussed
 
 
 [2]
 Code of Tennessee, § 6434