Sidney C. ANSCHELL, Girard Anschell and Grosvenor Anschell, a copartnership, d/b/a International Gift of the Month Club, Plaintiffs,

v.

Maxwell SACKHEIM, David Margulies, Maxwell Sackheim & Co., Inc. and Around-The-World Shoppers Club, Defendants.

Civ. A. C–820.

United States District Court
D. New Jersey.
Oct. 18, 1956.

---

Philip Rosenberg, Newark, N. J., for plaintiffs, Warren L. Schnur, New York City, of counsel.

Max L. Rosenstein, Newark, N. J., for defendants, Daniel Gersen, New York City, of counsel.

WORTENDYKE, District Judge.

This case is before the Court on plaintiffs' motion for change of venue pursuant to 28 U.S.C.A. § 1404(a). The jurisdiction of this Court is invoked upon asserted diversity of citizenship between the plaintiffs and the defendants. The complaint alleges that the plaintiffs are citizens of the State of Washington; that the individual defendant Sackheim is a citizen of and the corporate defendant Maxwell Sackheim & Co. Inc. is a corporation organized under the laws of the State of New York; and that the defendant Margulies is a citizen of and the corporate defendant Around-the-World Shoppers ·Club is a corporation of the State of New Jersey.

The plaintiffs seek damages from the defendants, claimed to have resulted, first, from breach of a confidential relationship between Sackheim and the Sackheim Company on the one hand and the plaintiffs on the other, arising upon consultations had between plaintiffs with these defendants, looking to the employment of defendants' services by the plaintiffs in preparing an advertising program for the plaintiffs' business, and, second, from false representations alleged to have been made by Sackheim and the Sackheim company during such negotiations as a means of procuring a disclosure by the plaintiffs of the secrets of their business. Plaintiffs also charge Sackheim and the defendant Margulies with a conspiracy to defraud the plaintiffs, and allege that these individuals, in ·furtherance of the conspiracy, entered into agreements with foreign suppliers of merchandise, and organized the corporate defendant, Around-the-World Shoppers Club, as a vehicle for the conduct of a business similar to that of the plaintiffs and using plaintiffs' methods and trade secrets secured as aforesaid. Against the latter corporate defendant (hereinafter referred to as Around-the-World) plaintiffs seek an ·accounting of its profits from the use of plaintiffs' business methods and secrets, and also injunctive relief from a continuance of the activities of ·Around-the-World. ·

This action was commenced by the filing of the complaint herein on September 12, 1955. Service of process was effécted, within this District (of New Jersey), upon the individual defendant, Margulies, personally, and upon Around-the-World by service upon Margulies as President of that corporation. The defendants so served in this action have appeared by respective answers filed in the cause. No service in this action was effected upon Sackheim or upon the Sackheim company. However, it appears ·from the affidavit of New York counsel for the plaintiffs that about five months prior to the commencement of this action, to wit in April 1955, a similar action was commenced by the same plaintiffs against the same defendants, in the Southern District of New York, upon an identical complaint, and in that (New York) action, process was served upon the Sackheim company on April 28, 1955, and personally upon the individual defendant Sackheim on May 2, 1955; but that efforts to serve Margulies and Around-the-World in the New York action were unsuccessful. Sackheim ·and the Sackheim company filed a joint answer in that action and, in the course of discovery proceedings therein, the defendant Margulies testified as to transactions underlying the causes of action set forth in each ·complaint. Admitting that the New Jersey action was instituted "to protect a possible bar to plaintiffs' actions by the

(New York) Statute of Limitations, * * * " and having, accordingly, selected the District of New Jersey as the forum, plaintiffs now move, pursuant to the section of the Code above cited, for a transfer of this action to the United States District Court for the Southern District of New York. More specifically, the present motion is for a change of venue from the District of New Jersey to the Southern District of New York or, in the alternative, for a transfer to the latter District and for a consolidation of this action with the similar action pending in the proposed transferee Court. Affidavits have been filed in support of and in opposition to the motion, and oral argument and briefs in behalf of all parties have been heard and considered.

In substance, plaintiffs assert (in addition to the fact that Sackheim and the Sackheim company are citizens of New York and have been served and have appeared in the pending New York action) that Margulies also is a resident of the State of New York, but that a present attempt to serve Margulies in the pending New York action "would grant to the said defendant a possible defense of the Statute of Limitations as a bar to the action." Plaintiffs further assert that, although Around-the-World is a New Jersey corporation, and has been served in the District of New Jersey, that corporate defendant was, at the time of the commencement of the present action, and still is, doing business in and therefore is amenable to the service of process in the State of New York and in the pending New York action. Plaintiffs therefore represent that a transfer of this action to the Southern District of New York "would afford a more convenient forum for a single trial of the entire action (sic), against all of the named defendants" since the same evidence and witnesses will be required in support of and by way of defense to the complaint in each of the actions.

Margulies and Around-the-World, in opposition to plaintiffs' instant motion, present the respective affidavits of Margulies and of their New York counsel, from which it appears that Margulies has been amenable to process in the New York action for substantially all of the period since this action was commenced, and that on more than one occasion his attorney had suggested to New York counsel for the plaintiffs that an appointment be made for the service upon Margulies in the New York action at a time and place to be agreed upon by counsel for the respective parties, but that this offer was never accepted. In his own affidavit Margulies, the president of Around-the-World, states that the corporation "never qualified to do business in New York * * * never maintained any office of any kind in New York * * never had any employees who work in New York * * * has never been listed in any New York telephone directory nor has its name ever appeared in any office or building in New York * * * (and it) has never had any salesmen in the State of New York, on either a temporary or a permanent basis." It is also represented that the corporation has bank accounts in both New York and New Jersey, and uses its New York bank account to facilitate remittances to foreign suppliers of merchandise shipped to its subscribers. Affiant Margulies states further that all of the corporate activities of the Club take place in New Jersey and that its stockholders' and directors' meetings are held and its books and records are kept in that State.

By newspaper and periodical advertising and direct mail solicitation, Around-the-World invites members of the public at large to "join" the Club by filling out and forwarding to the corporation's office in New Jersey an "application" upon a form attached to the solicitation, and to accompany such application by a payment of a sum of money, in return for which Around-the-World undertakes to cause a gift of merchandise to be shipped to the "applicant" by a foreign supplier. Apparently the "applicant" for enrollment as a member in the Club pays a sum of money determined by the number of months of membership desired for the privilege of receiving "each

month * * * a surprise package sent (to the member) direct from a different foreign country." Some comfort is proffered to the enrollee in the Club by the assurance that if he becomes "displeased in any way" he may "simply resign membership" and his "unused payment will be refunded." It is contended, therefore, that Around-the-World, a New Jersey corporation, not qualified to do business in New York, is not "doing business" and is not amenable to service of process and, therefore, not "found" in New York. Moreover, respondents to this motion argue that no justification has been shown by movants for this Court's exercise of the discretionary power delegated by the Code section invoked in the direction sought.

■■■■ We may readily dispose, at the outset, of the aspect of the motion which seeks the consolidation of this action with the pending New York action. This Court has no authority to order such a consolidation. If this Court were to order a transfer of this action to the United States District Court for the Southern District of New York, the latter tribunal, and it alone, would have the authority to consolidate this action with the action there pending. Rule 42(a), Rules of Civil Procedure, 28 U.S.C.A.

28 U.S.C.A. § 1404(a) provides as follows:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Various judicial pronouncements heretofore made to the contrary notwithstanding, the foregoing section is not a codification of the doctrine of forum non conveniens. Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789. The opinion in Norwood, which affirmed the Court of Appeals for the Third Circuit, adopted the viewpoint expressed by that Court of Appeals in All States Freight v. Modarelli, 3 Cir., 1952, 196 F.2d 1010 that a District Judge has a broader discretion in the application of

§ 1404(a) than he would have under the doctrine of forum non conveniens, and that under the latter doctrine a successful motion works a dismissal of the action with consequent exposure of the plaintiff to a loss of his cause of action through the running of the Statute of Limitations, while a transfer under § 1404(a) does not work such a dismissal but keeps alive the transferred cause of action. The Supreme Court further pointed out in Norwood, 349 U.S. at page 32, 75 S.Ct. at page 546, that in consequence of the harshness of the result of a successful motion under forum non conveniens

> "We believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience."

In Ex parte Collett, 1948, 337 U.S. 55, at page 58, 69 S.Ct. 944, at page 946, 93 L. Ed. 1207, the Supreme Court, quoting from the Code reviser's notes, pointed out that § 1404(a) " 'requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so.' " Nevertheless, despite the clear breadth of discretion accorded to the trial judge to transfer under § 1404(a), the principles justifying the application of the doctrine forum non conveniens are still implicit in the language of the section. Therefore, the moving party must "show a great deal more than merely that it would be more convenient to try the case in a different jurisdiction." Naughton v. Pennsylvania R. Co., D.C.Pa.1949, 85 F.Supp. 761, 763; or, in the language of the Supreme Court in Williams v. Green Bay & W. R. Co., 326 U.S. 549, 554, 66 S.Ct. 284, 287, 90 L.Ed. 311, "It (the doctrine) was designed as an 'instrument of justice.' Maintenance of a suit away from the domicile of the defendant—whether he be a corporation or an individual—might be vexatious or oppressive." It has been said that the purpose of the section under consideration is "to afford relief to a defendant by placing him on a footing of

equality with a plaintiff in the selection of a forum for the trial of the case", and, therefore, that "it would be improper to hold * * * that the plaintiff's rights are enlarged thereby and that he may carry the defendant about the country to a forum that best suits his convenience and do so by virtue of the statute." Barnhart v. John B. Rogers Producing Co., D.C.Ohio 1949, 86 F.Supp. 595, 599. Dufek v. Roux Distributing Co., D.C.N.Y. 1954, 125 F.Supp. 716, refused to follow Barnhart in denying a motion for transfer under section 1404(a) made by the plaintiff; but Dufek is factually distinguishable from Barnhart because, as pointed out by District Judge Walsh in Dufek, "Plaintiff's claim that the convenience of the parties and witnesses and the interest of justice will be served by changing venue is not disputed" and "[n]either party has questioned this Court's power to transfer venue under section 1404 * * *." In the case at bar, the defendants Margulies and Around-the-World emphatically deny that the transfer sought will be for the convenience of the parties and witnesses or in the interest of justice and vigorously contend that, upon the facts disclosed, this Court is without the power to order the transfer.

■ It is generally held that a transfer under § 1404(a) is not available to a plaintiff who has voluntarily chosen his own forum. This principle is recognized in Thompson Products, Inc., v. Pennsylvania R. Co., D.C.N.Y.1955, 127 F.Supp. 449, mandamus denied Torres v. Walsh, 2 Cir., 221 F.2d 319, despite the granting of such a plaintiff's motion in that case. But in Thompson Products, after the plaintiff had selected its forum in the action for damages to a shipment over the defendant railroad consigned to the plaintiff, plaintiff learned that the damage had been caused by improper loading by the consignor and therefore sought to join the consignor as a defendant. Since, however, the consignor was not subject to suit in the forum selected by the plaintiff, but both consignor and the railroad could be sued in the District in which the cause of action arose and where most of the witnesses resided, the showing of these circumstances by the plaintiff was held to entitle it to a transfer under the section, because such transfer would operate for the convenience of the parties and witnesses and be in the interest of justice. Thompson Products therefore is not at variance with the principle enunciated in Barnhart that, in the absence of a clear showing of inconvenience to parties and witnesses and of injustice, plaintiff will be held to the forum which he has selected. In McCarley v. Foster-Milburn Co., D.C. N.Y.1950, 89 F.Supp. 643, a plaintiff successfully moved under § 1404(a) but disclosed ample grounds under the criteria specified in the section.

■ This Court feels that movant has not shown sufficient justification for the exercise of the Court's discretion to transfer this case from the forum which the plaintiff voluntarily selected. The only affidavits submitted by movants in support of the instant motion are those of Warren L. Schnur, the New York counsel for the plaintiffs, who has appeared in both the New York and the New Jersey actions. Mr. Schnur says that the defendant Margulies is a resident of New York and, therefore, amenable to process in the Southern District of New York, but he adds that "service upon the said Margulies in the New York action at this time would grant to the said defendant a possible defense of Statute of Limitations as a bar to the action." Mr. Schnur then concludes, upon the foregoing factual statement, that the venue of the New Jersey action against Margulies should be changed to the Southern District of New York. With respect to Around-the-World, Mr. Schnur concludes that the Southern District of New York would be a more convenient forum for a single trial of the entire action against all of the named defendants because, as he points out, the evidence is the same in both of the pending actions, the witnesses will be identical "and substantial savings of money and time will enure to all of the parties as well as

to this Court." The deponent then proceeds to review the proceedings which have already been taken in the New York action, points out that Margulies has been present and represented by counsel at most of the discovery depositions therein, and that it was found, after the New Jersey action was commenced, that Margulies actually resided in the State of New York, despite his representations that he resided in New Jersey, and despite the fact that he was personally served in the latter State. In further support of his conclusion that a denial of the motion will cause severe hardship to the plaintiffs, Mr. Schnur says "This is so, because as Daniel Gersen, Esq., the New York attorney for Margulies so aptly stated to me, by maintaining the two actions, one in New York and one in New Jersey, Margulies in effect 'gets two bites out of the apple'!" Mr. Schnur admits that after unsuccessful attempts to serve Margulies at his alleged residence in New York, the New York attorney for Margulies offered to make his client available for service in that jurisdiction. The plaintiff's representations and contentions may be fairly and more succinctly summarized in the statement that although they first selected the New York forum for the litigation of the claims which they have set forth in the complaint, they were unable to serve process upon Around-the-World and preferred not to attempt to serve process upon Margulies in that District. Plaintiffs, therefore, instituted an exactly similar action in the District of New Jersey, in which service upon both of these defendants was readily and properly effected, and now the plaintiffs attempt, by their present motion, to subject to the jurisdiction of the New York Court two parties over whom plaintiffs have caused the New Jersey Court to obtain jurisdiction, and one of whom, at least, could not have been brought into the New York forum in the first instance.

If the New Jersey case is tried, the place of trial will be separated from the place of trial of the New York action by not more than ten or fifteen miles. Both locations are within what is known as the New York Metropolitan Area, within which thousands of wage and salary earners daily move to and fro between their respective homes and places of employment. There has been no showing of any substantial inconvenience to witnesses who may be called in either of the pending actions, nor to the parties therein, except that the latter may be compelled to incur additional expense consequent upon their employment of local counsel in the New Jersey action. These attorneys were voluntarily employed by the plaintiffs, but despite their employment, New York counsel for the parties argued and submitted briefs upon the present motion.

■ I am persuaded, however, that the defendant Margulies presently resides in New York City and, therefore, that the New Jersey action against him could have been brought in New York where he would have been amenable to service of process. Upon the argument of this motion I was preliminarily inclined to order the transfer insofar as Margulies is concerned; but, in view of my findings respecting Around-the-World, I do not interpret the section; 1404(a), as authorizing this Court to split the pending action by transferring a part of it to the Southern District of New York.

■■ What has been said respecting the failure of the plaintiffs to discharge the burden of showing that the convenience of the parties and witnesses required, and that it would be in the interest of justice to order, the transfer of the New Jersey action to New York, is equally applicable to the defendant Around-the-World, and suffices to compel me to deny the motion as far as that corporate defendant is concerned. But there is another reason why the action should not be transferred insofar as it affects the defendant Around-the-World. The section invoked permits the transfer sought to be made "to any other District * * * where it might have been brought." Around-the-World is admittedly a New Jersey corporation, having

its principal office within the State of New Jersey and without authorization or license from any appropriate authority of the State of New York to transact business in that jurisdiction. The venue statute, 28 U.S.C.A. § 1391(c), provides as follows:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Since, therefore, the first two of the alternatives contemplated by the statutory subsection are inapplicable to Around-the-World we inquire whether it is "doing business" in the State of New York for the purpose of determining whether the pending New York action could have been brought against it. The parties to this motion have vigorously argued and fully briefed the question whether Around-the-World is or was, at the time of the institution of the New York action, "doing business" in the State of New York. In contending for the affirmative of this question, plaintiffs rely upon International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; Green v. United States Chewing Gum Manufacturing Co., 5 Cir., 224 F.2d 369; and Schutt v. Commercial Travelers Mutual Accident Association, 2 Cir., 229 F.2d 158. Respondent defendants, however, denying that the operations of Around-the-World constitute doing business in New York, cite as their authorities Cannon v. Time, Inc., 4 Cir., 1940, 115 F.2d 423; and Schmidt v. Esquire, 7 Cir., 1954, 210 F.2d 908.

In Partin v. Michaels Art Bronze Co., Inc., 3 Cir., 1953, 202 F.2d 541, 542, Judge Goodrich explains that the determination of the question whether the activities of a foreign corporation in a State constitute doing business therein so as to subject the corporation to suit in that jurisdiction depends upon the answers to two questions: (1) "Whether the State seeks to assert jurisdiction under a given set of facts" and (2) "whether the assertion of jurisdiction by the State is permitted, under the circumstances, by the Constitution of the United States." At page 543, Judge Goodrich reminds us that the decision in International Shoe, supra "presented the question whether the State of Washington was going outside constitutional limits in asserting jurisdiction for its courts without there having been, in the State, a course of contract-making by the representatives of the defendant." and, at page 544, in discussing the Travelers Health and Perkins cases, Judge Goodrich pointed out that: "Each of them, like the International Shoe case, involved adjudication by the Supreme Court upon the question how far the State could go in asserting jurisdiction without violating the defendants' rights under the Constitution." In deciding that the Kentucky corporation which was before it was not "doing business" in Pennsylvania so as to subject itself to an action for libel unrelated to anything done in Pennsylvania, the Third Circuit Court of Appeals did not reach the question passed upon in International Shoe, but, upon the decisions of the Pennsylvania Courts, on the question of "doing business", concluded that the Kentucky corporation was not doing business in Pennsylvania. We, therefore, look to the decisions of the Courts of New York to determine whether Around-the-World was doing business in that State. Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 36.

While recognizing that the determination of whether a foreign corporation is doing business in New York must depend upon the particular facts of the case under consideration, the Court of Appeals of that State in Sterling Novelty Corp. v. Frank & Hirsch Distributing Co., 1949, 299 N.Y. 208, 86 N.E.2d 564, 565, pointed out that the nature and extent of local purchasing activities by a foreign corporation are of similar weight,

in determining whether the corporation is doing business in that State, as the nature and extent of its selling activities within the jurisdiction; pointing out, as a general criterion of "doing business" that

"Continuity of action from a permanent locale is essential. The foreign corporate defendant must be 'here, not occasionally or casually, but with a fair measure of permanence and continuity'."

The same case also determined that representation of a foreign corporation in its local activities by a separate individual or by a separate corporation instead of by a directly controlled subsidiary or branch office is not determinative of the question whether the corporation is doing business within the State; but if a resident buyer is acting as agent of the foreign corporation, the absence of a local corporate office will not deprive the New York Courts of jurisdiction.

The weight of evidence submitted on this motion relevant to the question of whether Around-the-World does business in New York State, tested by the New York criteria above indicated, seems to compel the conclusion that Around-the-World was not doing business, and, therefore, was not found in, and hence this action could not have been brought against that corporation in the State of New York. Reduced to its simplest features, the activities of Around-the-World, insofar as they affected New York residents, consisted of the broadcasting by mail and through advertising media of invitations to enroll in membership in the "club" by filling out a membership application and sending it with a certain monetary payment to the corporation at its office in New Jersey. Thereupon receipt of the application would be acknowledged by the corporation to the applicant by mail, and an order placed by the corporation with a shipper of merchandise in a foreign country directing the shipment of an article of merchandise directly to the enrolled member. Plaintiffs say that a contract resulted between a person in New York who responded to the corporation's offer of enrollment, when the applicant signed and mailed the application form accompanied by the required payment. Defendant contends, however, that no contract came into existence until the application for enrollment had been accepted by the corporation. In support of their contention in this regard plaintiffs rely on Packard Englewood Motors, Inc., v. Packard Motor Car Co., Inc., 3 Cir., 1954, 215 F.2d 503, and upon Wester v. Casein Co. of America, 206 N.Y. 506, 100 N.E. 488. Both of these decisions recognize the principle stated in Section 65 of the Restatement of the Law of Contracts that transmittal of an acceptance of an offer by the means directed in the offer results in the formation of a contract at the place of such acceptance unless otherwise indicated. Around-the-World contends that no contract resulted until it accepted the application for enrollment. Assuming, however, that the transmittal of the application for enrollment with the required fee by mail from New York to the offeror corporation created a contract, the consummation of the contract would not constitute the doing of business in New York. Schmidt v. Esquire, Inc., 7 Cir., 1954, 210 F.2d 908, certiorari denied sub nom. Schmidt v. Crowell-Collier Publishing Co., 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646; Cannon v. Time, Inc., 4 Cir., 1940, 115 F.2d 423. In Cannon it was pointed out, at page 425, that "Mere solicitation of business by an agent does not constitute such a doing of business as to subject a foreign corporation to the local jurisdiction; and the situation is not changed by the fact that the agent may collect some money in connection with the business solicited." To a similar effect are Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710.

The cases relied upon by plaintiffs are distinguishable from and do not control the immediate question. In Cannon, supra, Judge Parker, 115 F.2d at page 425, summarizes International Harvester Co. of America v. Commonwealth of Ken-

tucky, 234 U.S. 579, 34 S.Ct. 944, 58 L. Ed. 479, as disclosing "a continuous course of business of large volume within the state, evidenced by solicitation of orders, delivery of goods, acceptance of checks and drafts and the discounting of these within the state" which supported the conclusion that "all of these things, taken together, amounted to the doing of business within the state." The question posed in International Shoe, supra, [326 U.S. 310, 66 S.Ct. 156], was whether that (Delaware) corporation had "by its activities in the State of Washington rendered itself amenable to proceedings in the courts of that state to recover unpaid contributions to the state unemployment compensation fund exacted by" the Washington State Statutes. The question was answered affirmatively because, although the foreign corporation had no office in the State of Washington and made "no contracts either for sale or purchase of merchandise there * * *" and maintained "no stock of merchandise in that state and makes there no deliveries of goods in intrastate commerce", it employed eleven to thirteen resident salesmen under direct supervision and control of sales managers in its home office in St. Louis, whose activities were confined to the State of Washington and whose compensation was in the form of commissions based upon the amount of their sales in that State. It also appeared that these salesmen were furnished by their employer with samples for display to prospective purchasers, and were reimbursed by the employer for rentals paid for sample and hotel rooms used in their sales activities. Each salesman was authorized to exhibit samples and solicit orders at prices and on terms fixed by the employer; the orders being thereafter transmitted to the corporation's office in St. Louis where the orders were accepted and shipment of merchandise made to the purchasers. No salesmen had "authority to enter into contracts or to make collections." Because the foregoing activities of the foreign corporation in Washington were "systematic and continuous" and "resulted in a large volume of interstate business, in the course of which (the corporation) received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights" and "the obligation * * sued upon arose out of those very activities" the Supreme Court concluded "that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there." The dissimilarity of the facts at bar to those involved in International Shoe is obvious. Those in Travelers Health, Perkins, Green and Schutt, supra, are equally distinguishing.

This action could not have been brought against Around-the-World in New York under 28 U.S.C.A. § 1391(c). Therefore, the action may not be removed as to Around-the-World under 28 U.S.C.A. § 1404(a). I do not construe the latter subsection as authorizing the transfer of an action as to one or as to less than all of several parties from one District to another. Therefore, even if this action might have been brought against the defendant Margulies in New York, and even if the transfer of this action to the Southern District of New York might subserve the convenience of the parties and witnesses and appear to be in the interest of justice as far as plaintiffs and defendant Margulies are concerned, I would still feel impelled to deny the present motion. It is accordingly so ordered.