### CANNON v. TIME, Inc., et al.
No. 4661.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1940.

George E. Allen, of Richmond, Va., for appellant.

George D. Gibson, of Richmond, Va., and Richard W. Emory, of Baltimore, Md. (Hunton, Williams, Anderson, Gay & Moore, of Richmond, Va., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order quashing the return of service of summons and dismissing an action instituted to recover damages for libel. The plaintiff in the court below was James Cannon, Jr., a citizen of Virginia. The defendants were Time, Inc., a corporation of New York, and Time, Inc., a corporation of Delaware. Service of process was made upon the manager of the Richmond News Company, a branch or division of the American News Company, a corporation having its principal place of business in New York. Evidence taken upon the hearing of the motion to dismiss shows that defendants do no business in Virginia, except such as they may be held to do through this branch of the American News Company; and consequently the case resolves itself into a question as to whether they are doing business in Virginia through the agency of that corporation.

Defendants are engaged in the publication and distribution of "Time" and "Life" magazines. The facts with regard to the distribution of these magazines and the taking of subscriptions therefor through the American News Company were correctly found by the judge below in his seventh and twelfth findings of fact, which are as follows:

"7. In the case of newsstand distribution, the magazines are bundled at the printing plant in Chicago for distribution by freight or express to the various branches of the American News Company or other distributors. Bundled copies of Time and Life are delivered to the carrier who is going to take them, and the defendants have nothing to do with the actual physical distribution. The American News Company or other distributors handling the newsstand circulation are billed out of the New York office and payments are made to the New York office. The American News Company furnishes Time (Delaware) with a list of its branches throughout the country to which it desires to have copies of Time and Life delivered, together with a statement of the number of copies to be delivered. Time (Delaware) thereupon arranges for the shipping of such copies to the branches of the American News Company, and sends bill therefor to the American News Company in New York. Payment is made weekly by the American News Company in a lump sum covering the total copies sent to all of its branches, by sending to Time (Delaware) a check covering all copies of the previous issue delivered to American News Company, less the number of unsold copies of the previous issue which are returned that week.

"12. Richmond News Company is merely a name for the Richmond branch of American News Company. Its business is the sale of newspapers and magazines, chiefly at wholesale, to its customers, who operate newsstands. So far as the two defendants are concerned, the principal relation of American News Company and the principal business of American News Company are as described and set out in Finding No. 7. In addition Richmond News Company receives annually about ten to fifteen subscriptions to the publications of the defendants, and solicits or receives approximately one thousand subscriptions a year through newsstands and department stores. Upon receipt of such subscriptions, Richmond News Company forwards them to its head office in New York City. American News Company submits such subscriptions to the head office of Time, Inc., in Chicago. No one has authority to accept subscriptions except the head office of Time, Inc., in Chicago, and no subscription constitutes a binding agreement until it is so

accepted. Occasionally, but very rarely, such subscriptions have been rejected by Time, Inc. All moneys collected by Richmond News Company on account of such subscriptions are deposited in a Richmond bank to its own account and a credit is made on its books to the American News Company and a memorandum to that effect is sent to that office in New York. Subsequently, the American News Company in New York bills the Richmond News Company for said amount and American News Company in New York settles with Time, Inc."

On these facts, we think that the court below properly held that the defendants were not doing business within the state so as to subject them to the service of process. As said by the Supreme Court in the case of Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 88, 53 S.Ct. 529, 530, 77 L.Ed. 1047: "In order to hold a foreign corporation not licensed to do business in a state responsible under the process of a local court the record must disclose that it was carrying on business there at the time of attempted service. International Harvester Co. v. Kentucky, 234 U.S. 579, 583, 585, 34 S.Ct. 944, 58 L.Ed. 1479. 'The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted.' People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537.

It is conceded that the defendants were not present doing business within the state by reason of the sale of magazines at the news stands of the News Company (see Whitaker v. MacFadden Publications, 70 App.D.C. 165, 105 F.2d 44); and we do not think that presence and doing of business can be predicated of the acceptance of and collection for subscriptions upon which reliance is placed. The relationship of the News Company to these transactions was the same in both instances, i. e. that of an independent contractor. The news stands, department stores, etc., accepted and collected for subscriptions to defendant's magazines, it is true; but this was business done by the stores and news agencies for themselves, not as agents of the defendants. While defendants might under some circumstances be estopped to dispute the agency of the stores and news stands as against one placing a subscription with them, such estoppel would not prevent their showing the true situation as against a third person; and the true situation was that the stores and news stands were not the agents of defendants but were independent contractors dealing on their own account, and that, not until after the subscriptions had been obtained and forwarded to defendants and accepted by them, did a contract arise with the subscribers. So far as doing business within the state is concerned, we see no difference in principle between these transactions and those involving sale of the magazines at the news stands. If such transactions constitute a doing of business within the state, then all magazines which accept subscriptions through the so-called subscription agencies which send around traveling representatives are doing business in every state in the Union.

Even if the News Company be considered the agent of defendants in accepting and collecting for subscriptions, it does not follow that the defendant should be held present and doing business within the state. Mere solicitation of business by an agent does not constitute such a doing of business as to subject a foreign corporation to the local jurisdiction; and the situation is not changed by the fact that the agent may collect some money in connection with the business solicited. Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Tignor v. L. G. Balfour & Co., 167 Va. 58, 187 S.E. 468; 20 C.J.S., Corporations, § 1920, pp. 166, 167. The case of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, is not to the contrary. That case disclosed a continuous course of business of large volume within the state, evidenced by solicitation of orders, delivery of goods, acceptance of checks and drafts and the discounting of these within the state. The court held that all of these things, taken together, amounted to the doing of business within the state. In a very different category, we think, is the solicitation of subscriptions to a magazine, even though the solicitor be authorized to collect for the subscriptions. The custom of magazines to offer premiums and other compensation to persons procuring paid subscriptions for them is one of long standing; and it has never been supposed that the ob-

taining of subscriptions in this way brought the magazines within the jurisdiction of the state any more than the obtaining of such subscriptions through the mails. If regarded as the doing of business within the state, the business is not of sufficient volume or importance to warrant the inference that the corporation itself is present within the state by its duly authorized officers or agents upon whom service of process may be had. Cf. Boardman v. S. S. McClure Co., C.C., 123 F. 614; Davega, Inc. v. Lincoln Furniture Co., 2 Cir., 29 F.2d 164; Acton v. Washington Times Co., D.C., 9 F.Supp. 74; Lauricella v. Evening News Pub. Co., D.C., 15 F. Supp. 671.

■ Little need be said as to plaintiff's contention that the officer's return is conclusive. The statement in the return, that the person served was an agent of the defendants, was nothing more than the officer's conclusion; and the contention, that the court is bound by such conclusion on a motion to quash the return, is so manifestly unsound as not to warrant discussion. See Earle v. McVeigh, 91 U.S. 503, 23 L.Ed. 398; Tignor v. Balfour & Co., supra; Bank of Bristol v. Ashworth, 122 Va. 170, 99 S. E. 469. Many troublesome jurisdictional questions could be solved very easily if the return of the process officer were accepted as conclusive. The courts, however, may not thus abdicate the judicial function to the server of process.

There was no error and the order appealed from will be affirmed.

Affirmed.