HARLEY A. PUTNAM v. TRIANGLE PUBLICATIONS, INC.

(Filed 1 February, 1957.)

**1. Appeal and Error § 22—**

An assignment of error to the findings of fact on the ground that the findings are not supported by the evidence is ineffectual as a broadside assignment of error, it being required that the assignment designate the particular rulings to which the exceptions were taken so that the alleged error is presented by the assignment of error itself.

**2. Appeal and Error § 21—**

Where the assignments of error are insufficient to present the findings of fact for review, the appeal presents the questions whether the findings support the court's inferences and conclusions of law and judgment, and whether error appears on the face of the record.

**3. Constitutional Law § 20: Process § 8d—**

Whether a foreign corporation is doing business in North Carolina so as to subject it to the jurisdiction of the State's Courts is essentially a question of due process of law under the 14th Amendment to the Federal Constitution, which must be decided in accord with the decisions of the U. S. Supreme Court.

**4. Process § 8d—**

A foreign publishing company which delivers to a common carrier in another state magazines for shipment to a wholesole dealer in this State for resale in this State by the dealer, with provision for credit to the dealer for unsold magazines, and which employs sales promotion representatives who make occasional visits in this State, *is held* not doing business in this State for the purpose of service of process by service upon the Secretary of State under G.S. 55-38.

**5. Same—**

G.S. 55-38.1(a)(3) in regard to an action for libel against a foreign publishing corporation which delivers magazines to a common carrier for shipment to a wholesale dealer in this State for resale by the dealer, and which employs sales promotion representatives who make only occasional visits in this State, is unconstitutional, since such corporation has no contacts,

ties or relations within this State so as to make it amenable to service of process here for the purpose of a judgment *in personam*.

**6. Same: Sales § 11—**

A foreign publishing corporation purchased an article from a nonresident and published same in its magazine. Its magazines were delivered by it to a common carrier in another state for shipment to wholesale dealers in this State. Plaintiff brought a suit for libel based upon the article. *Held:* The tortious act was not committed in this State, and therefore G.S. 55-38.1(a)(4) is inapplicable and does not authorize service of process on the corporation by service on the Secretary of State. G.S. 55-38.1(a)(1) and (2) are inapplicable to the facts of this case.

JOHNSON, J., not sitting.
HIGGINS, J., concurs in result.

APPEAL by plaintiff from *Preyer, J.,* June Civil Term 1956 of GUILFORD (Greensboro Division).

Civil action for libel and invasion of privacy heard upon defendant's special appearance and motion to quash the summons and purported service of process, and to dismiss the action, and upon defendant's supplemental special appearance and motion to the same effect.

From a judgment quashing the attempted service of summons and complaint upon the defendant, and dismissing the action for want of jurisdiction over the person of the defendant, plaintiff appeals.

*Smith, Moore, Smith, Schell & Hunter by Stephen Millikin for Plaintiff, Appellant.*
*Brooks, McLendon, Brim & Holderness for Defendant, Appellee.*

PARKER, J. Upon defendant's special appearances and motions to quash the service of summons and complaint and to dismiss the action, the judge heard evidence, made elaborate findings of fact, conclusions of law and rendered judgment as set forth above.

This is plaintiff's assignment of error as to the judge's findings of fact: "1. For that the Judge of the Superior Court made certain findings of fact, which findings of fact are not supported by the evidence and which findings are contrary to the evidence. EXCEPTIONS 1, 2, 3, 4, 5, 6 and 16 (R. pp. 38, 39, 40, 41, 42, 46)." This is a broadside assignment of error, which fails to point out or designate in the assignment of error the particular rulings to which exceptions are taken, so that in the assignment of error we can see the alleged error made by the judge. "When it is claimed that findings of fact, so made by the trial judge, are not supported by the evidence, the exceptions and assignments of error in relation thereto must specifically and distinctly point out the alleged errors." *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351. See *Suits v. Ins. Co.,* 241 N.C. 483, 85 S.E. 2d 602.

This assignment of error does not comply with the rules and decisions of this Court. Rule 19(3) and Rule 21, Rules of Practice in the Supreme Court, 221 N.C. 544, *et seq.; Burnsville v. Boone, supra; Vestal v. Vending Machine Co.,* 219 N.C. 468, 14 S.E. 2d 427.

"The Court will not consider assignments not based on specific exceptions and which do not comply with its rules." *Travis v. Johnston,* 244 N.C. 713, 95 S.E. 2d 94.

Plaintiff's assignment of error is not sufficient to bring up for review the findings of fact or the evidence upon which they are based, and leaves for decision the questions whether the findings of fact made by the judge support his inferences and conclusions of law and judgment, and whether any error of law appears on the face of the record. *Horn v. Furniture Co.,* ante, 173, 95 S.E. 2d 521; *Travis v. Johnston, supra; Bailey v. Bailey,* 243 N.C. 412, 90 S.E. 2d 696; *Radio Station v. Eitel-McCullough,* 232 N.C. 287, 59 S.E. 2d 779; *Rader v. Queen City Coach Co.,* 225 N.C. 537, 35 S.E. 2d 609; *Power Co. v. Moses,* 191 N.C. 744, 133 S.E. 5.

Plaintiff's assignment of error No. 2 is to the conclusions of law, and is as broadside and indefinite as his assignment of error No. 1, and is set forth in substantially the same language.

This is a summary of the judge's relevant findings of fact:

Plaintiff is a citizen and resident of Guilford County, North Carolina, and instituted this action to recover damages for an article published in a magazine called *Official Detective Stories,* which he alleges constituted a wrongful invasion upon his private life and was libelous.

Defendant is a Delaware corporation having its principal office at 400 North Broad St., Philadelphia, Pennsylvania. Defendant has not procured a certificate of authority from the Secretary of State of North Carolina to transact business in this State; it has never been licensed to do business in the State; and it has never designated or authorized anyone to act as a process agent or officer for it in the State.

Service of process on the defendant was sought to be made by serving the Secretary of State as agent for the defendant with copies of the summons and complaint, pursuant to G.S. 55-38.05, 55-38.1 and 55.38.2.

Defendant publishes and sells magazines and newspapers in wholesale lots, such as *Official Detective Stories, Seventeen, The Philadelphia Inquirer, The Morning Telegraph, Daily Racing Form* and *TV Guide.* Defendant sells one or more of these publications to 18 independent wholesale newsdealers in North Carolina. These sales are made by the defendant delivering the publications to common carriers in States other than North Carolina. Legal ownership and title to the publications pass from defendant to these independent wholesale newsdealers upon their delivery by the defendant to the common carrier. Upon receipt of these publications the wholesale newsdealers at their own

expense sell and deliver them to retail dealers. These wholesale news-dealers in the State are charged by the defendant current wholesale prices for the publications sold and shipped to them during the month, and settlement is due by the 10th day of the month for magazines purchased and shipped during the preceding month. These newsdealers are given credit for unsold copies of these publications, evidenced by returned covers mailed at their cost to defendant. The bills for these publications are paid at the offices of defendant in Philadelphia, Pennsylvania, or Washington, D. C. Defendant has authorized no person, firm or corporation to receive or collect payments of moneys for or in its behalf in North Carolina.

Defendant has no financial interest of any kind in any wholesale or retail dealer in North Carolina. It has never made any payments to them. It has never exercised, or attempted to exercise, any control, supervision or direction over the policy, management or details of the business of these wholesale newsdealers or retailers, or their personnel, or over the methods employed by them for the purpose of promoting the sales of publications, except to the limited extent that the normal relations between them result in general advice or suggestions concerning sales methods and distribution. These wholesale newsdealers do not hold themselves out to the public or the trade as being agents or representatives of defendant, and they do not do business in its behalf.

The defendant has never paid or furnished these wholesale news-dealers any money for any purpose in the operation of their business.

Some residents of North Carolina subscribe to some of the magazines published by defendant, but these subscriptions are solicited from outside the State by mail and by coupons attached to the magazines. No sales to subscribers are solicited in the State of North Carolina. Defendant has not sold any of its publications to anyone in North Carolina on a consignment basis. The cause of action alleged by plaintiff does not arise out of any business solicited in North Carolina by mail or otherwise.

Defendant has virtually no advertising from North Carolina. All advertising run in behalf of firms located in North Carolina is received at one of defendant's offices located in a foreign state, generally from an advertising agency in some other state, or occasionally from an advertiser without solicitation in North Carolina. During 1955 and up to 1 June 1956 defendant employed three persons as sales promotion representatives, who, from time to time, travelled in North Carolina in promotion of sales to newsdealers and television dealers. To be specific, James Fallon is one of these representatives who visits North Carolina newsdealers two or three times a year on behalf of *Official Detective Stories* and *Seventeen;* he picks up from independent news-dealers sales figures, statistics and information relating to its own and

competitive publications; his headquarters are in New York.   Another representative is Leo Dominsky for *TV Guide,* who visits dealers in North Carolina about three times a year obtaining statistics and promoting a sale of its publications; he works out of the Philadelphia office. Another was Barry Farber, who, from May 1955 to 1 June 1956, was employed by the TV Guide Division of defendant at the home office in Washington, D. C., as a sales representative to promote publicity for that magazine with TV stations in Virginia and North Carolina.   In that capacity he called on TV stations and arranged for them to promote by advertising the sale and use of *TV Guide.*   In exchange *TV Guide* would advertise for the cooperating TV stations, in other words "a swap deal on advertising would be arranged," but no exchange of money.   He called on nine TV stations in North Carolina about five times a year, spending at each station a few minutes to an hour.   His activities were purely incidental to defendant's business, which is a publishing company, and were undertaken with the hope of increasing the circulation of its periodicals.

Defendant does not own, lease, operate or maintain any office, publishing house or place of business in North Carolina; it does not have a listing in any telephone, business, city or other directory in the State; it does not have any regularly employed person or agent in the State; and it does not own, lease, possess or otherwise control or use any property of any kind in the State.

All articles published by defendant in *Official Detective Stories* are written by freelance writers, none employed by defendant.   This magazine has no staff of writers or reporters.   The editorial office of defendant is in Philadelphia, Pennsylvania, to which the freelance writers send their manuscripts.   If a manuscript is accepted, it is purchased by defendant.   The article, which is the basis of plaintiff's action, was written by a freelance writer, who lives and has his office in Richmond, Virginia.   He submitted this article to the defendant at its editorial office.   The defendant accepted it.   It was published by defendant in the October 1955 issue of *Official Detective Stories* in Philadelphia, Pennsylvania, and then delivered to a common carrier in that city for distribution as set forth above.   Defendant did not commit, engage or enter into any tortious conduct in the State of North Carolina by reason of its publication and sale of the October 1955 issue of *Official Detective Stories* in the manner described above.

No officer, director, stockholder, managing or local agent of defendant resides or performs any duties for defendant in North Carolina. No one collects or receives money in North Carolina for defendant. No one is authorized to, or does, make contracts or representations for or on behalf of defendant in North Carolina.  The causes of action

alleged by plaintiff do not arise out of any contract made in the State of North Carolina, or to be performed in this State.

Defendant published and delivered to common carriers in Philadelphia, Pennsylvania, the October 1955 issue of *Official Detective Stories* with the reasonable expectation that some of these magazines would be used or read in North Carolina, and some were.

Defendant has not transacted or done business in the State of North Carolina, and has not been present therein. The activities and contacts of its promotional employees within the State, as above set forth, are irregular, isolated, casual and insubstantial items; they are trivial and purely incidental to the ordinary publishing business carried on by defendant. The defendant does not have an authorized officer or agent in North Carolina, who carries on its publishing business.

The judge made the following conclusions of law based upon his findings of fact:

No personal service of process and complaint has been made on defendant, or any of its officers or agents. Defendant has entered a special appearance solely for the purpose of making its motion.

Defendant has not transacted or done business in the State of North Carolina, and has not been present in the State through its officers, agents, or in any other manner. The activities and contacts of defendant within North Carolina have been casual, incidental and insubstantial, and have not been such as would make it reasonable and just under traditional concepts of fair play and substantial justice to subject defendant to suit in the courts of the State of North Carolina. Defendant's activities and contacts in North Carolina, including the occasional visits of its agents, have only been promotional in nature, and have been insubstantial and negligible in quantity. The causes of action alleged by plaintiff do not arise out of nor are they connected with such activities. At no time has defendant transacted any substantial part of its ordinary business in North Carolina.

Plaintiff's alleged causes of action do not arise out of any contract made in North Carolina, or to be performed in North Carolina; do not arise out of any business solicited in North Carolina by mail or otherwise; do not arise out of the production, manufacture, or distribution of "goods" by the defendant with the reasonable expectation that such "goods" were to be "used or consumed" in North Carolina, and were so "used or consumed"; and do not arise out of tortious conduct in North Carolina.

Even if plaintiff's causes of action did arise out of any one or more of the situations set forth above in the conclusions of law, then, as applied to defendant under the facts of the instant case, the applicable provisions of G.S. 55-38.1 are void as violative of the State and Federal Constitutions, in so far as they purport to subject defendant to suit in

this State for the causes of action alleged here, for that such provisions would deprive the defendant of its property without due process of law, and deny it the equal protection of the law (U. S. Constitution, Amendment XIV(1), North Carolina Constitution, Article I, Sec. 17); would unreasonably obstruct and unduly burden interstate commerce (U. S. Constitution, Art. I, Clause 8); and would impose a prior restraint upon, and abridge the freedom of the press (U. S. Constitution, Amendment I).

The attempted service of summons and complaint on the defendant is invalid and should be quashed and set aside, and the action should be dismissed for want of jurisdiction over the person of defendant.

Whereupon, the judge entered judgment quashing the attempted service of summons and complaint upon the defendant, and dismissed the action for want of jurisdiction of the court over the person of defendant.

G.S. 55-38 provides that when a corporation has property or is doing business in North Carolina, and has no officer or agent in the State upon whom process in all actions or proceedings against it can be served, process may be served upon the Secretary of State.

Whether a foreign corporation is doing business in North Carolina, so as to subject it to the jurisdiction of the State's Courts, is essentially a question of due process of law under the U. S. Constitution, Amendment 14(1), which must be decided in accord with the decisions of the U. S. Supreme Court. *Harrison v. Corley,* 226 N.C. 184, 37 S.E. 2d 489; *American Asphalt Roof Corp. v. Shankland,* 205 Iowa 862, 219 N.W. 28, 60 A.L.R. 986 (where many cases are cited).

Our inquiry is restricted to jurisdiction for service of process, and is not concerned with jurisdiction for taxation, license or other purposes.

Recent decisions of the U. S. Supreme Court have greatly expanded the concept of a state's jurisdiction over nonresident defendants and foreign corporations. *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 161 A.L.R. 1057; Anno. U. S. Supreme Court Reports, 96 L. Ed. p. 495 *et seq.*

In *International Shoe Co. v. Washington, supra,* the Court said: "But now that the capias *ad respondendum* has 'given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' . . . Finally, although the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it, citing authority, other such acts, because

of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. . . . It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. Citing authorities. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contracts, ties, or relations."

In evaluating the decisions of the U. S. Supreme Court dealing with the question as to what facts are sufficient, or not sufficient, to support the power of the forum to subject a foreign corporation to a suit *in personam*, it must be kept in mind that the fundamental test has undergone a substantial change in *International Shoe Co. v. Washington*, *supra*, which in lieu of the former theories of "implied consent," "presence," or "doing business," introduces the "minimum contacts" test and the "fair play and substantial justice" rule, and this rule has been followed in subsequent cases like *Travelers Health Ass'n. v. Com. of Virginia*, 339 U.S. 643, 94 L. Ed. 1154. *Labonte v. American Mercury Magazine*, 98 N.H. 163, 96 A. 2d 200, 38 A.L.R. 2d 742, with elaborate annotation in A.L.R., pp. 747 *et seq.: Smyth v. Twin State Improvement Corp.*, 116 Vt. 569, 80 A. 2d 664, 25 A.L.R. 2d 1193.

In *Labonte v. American Mercury Magazine, supra,* the New Hampshire Supreme Court said: "Almost all cases of libel actions against foreign publishing corporations were dismissed on jurisdictional grounds before the decision in *International Shoe.* See *Street & Smith Publications v. Spikes*, 5 Cir., 120 F. 2d 895; *Whitaker v. Macfadden Publications, Inc.*, 70 App. D. C. 165, 105 F. 2d 44; *Cannon v. Time, Inc.*, 4 Cir., 115 F. 2d 423. At the present time libel actions against foreign corporations may be dismissed but the approach thereto is not as strict as formerly existed. See Note, 16 U. Chi. L. Rev. 523; annotations 96 L. Ed. 495 and 94 L. Ed. 1167, 1178."

To what extent this new concept will be applied has not yet become apparent, although a possible indication of its application was given in *Polizzi v. Cowles Magazine, Inc.*, 345 U.S. 663, 97 L. Ed. 1331, where the Court's reversal of the dismissal of a libel action against the defendant, the publisher of *Look Magazine*, was based on the technical ground that the lower court had applied the wrong venue statute. *Judge Black*, in a separate opinion, wrote that the defendant was doing business in

the State of Florida so as to be subject to suit.   However, the facts in that case are different from the facts here.   In that case the defendant had a regular agent in Florida, paid by the month, whose sole job was to carry on activities for the defendant in order to increase *Look's* circulation in Florida.   On this agent, who managed for the defendant all the business it carried on in Florida, process was served.

*Labonte v. American Mercury Magazine, supra,* was an action for libel against a foreign corporate publisher of a magazine, and involved the propriety of service of process upon the Secretary of State.   By contract with the defendant, the magazine was printed, assembled, bound and stored in New Hampshire by a local corporation, which also addressed and shipped copies of the magazine, and received and forwarded mail for the publisher.   The editorial and most proofreading was done in New York.   The Court held the defendant was doing business in the State, and sustained service of process.

*Schmidt v. Esquire, Inc.,* 210 F. 2d 908, *certiorari denied,* 348 U.S. 819, 99 L. Ed. 646, was a stockholder's derivative action for libel.   In that case the Court said: "The question of personal jurisdiction in the *Esquire case* may be quickly disposed of.   Affidavits filed with the District Court disclose the following: Esquire, Inc., is a corporation foreign to the State of Indiana and is not licensed nor admitted to do business there.   It publishes the *Esquire* and *Coronet* magazines, which are available in Indiana either through subscription or at the newsstand.   These magazines are printed in Chicago and are mailed directly from there to Indiana subscribers.   They are placed on newsstands in Indiana by the Curtis Circulation Company, an independent corporation which purchases the magazines from Esquire and effects distribution through independent wholesale organizations.   Esquire has no office of any kind in Indiana, and it has no employees or agents there to gather material for publication, nor to solicit advertising, subscriptions or newsstand sales.   Under these facts, we do not see how it can seriously be contended that Esquire was amenable to suit in Indiana. In the *Reader's Digest case* the plaintiff concedes, as well he must, that something more than this is required to give local jurisdiction.   *Cannon v. Time, Inc.,* 4 Cir., 115 F. 2d 423; *Whitaker v. Macfadden Publications,* 70 App. D. C. 165, 105 F. 2d 44.   Obviously, the necessary contacts with the state are absent here."

*Cannon v. Time, Inc.,* 115 F. 2d 423, was an action for libel.   Time, Inc., a foreign corporation, delivered its magazines to the Richmond News Company, the local branch of a foreign wholesale concern, which in turn sold to local newsstands and stores.   In addition, the Richmond News Company solicited and collected for subscriptions, and based upon this activity was the contention that Time was doing such business in Virginia as to be subject to local jurisdiction.   The Court held

that the News Company was an independent contractor doing business for its own account and not as an agent of Time. Therefore, Time was not doing business in Virginia, and was not subject to suit there.

*Reed v. Real Detective Pub. Co.,* 63 Ariz. 294, 162 P. 2d 133, was an action for libel and invasion of privacy, and in that case it was held that a foreign publishing company is not doing business in a state merely because it ships magazines to a dealer at wholesale prices for resale in the state by the dealer, and gives a credit to the dealer for unsold magazines.

In *Watson v. J. R. Watkins Co.,* 188 Miss. 435, 193 So. 913, an agreement was executed in Minnesota to furnish the purchaser, a resident of Mississippi, the products of the foreign corporation from without the state, at wholesale for resale. In rejecting the contention that the corporation was doing business within the state, the Court said: "The requirement that sales be reported to the seller by the purchaser does not prevent the passing of the title, nor does a provision in the contract allowing the purchaser to return unsold goods, nor does the designation of the purchaser's sale territory."

After a careful consideration of the detailed findings of fact of the judge, which are set forth above, and which it would serve no useful purpose to summarize and repeat, it is our opinion that the defendant has no contacts, ties, or relations with North Carolina, so as to make it amenable to service of process from the Courts of the State for the purpose of a judgment *in personam* against it. The occasional visits of agents of the defendant to the State as sales promotion representatives, upon the facts as found by the judge, are not deemed sufficient to render the defendant liable to suit in the State Courts. Upon all the facts found by the judge, he correctly concluded that defendant has not transacted or done business in the State of North Carolina. *International Shoe Co. v. Washington, supra.*

Plaintiff contends that if the defendant is not doing business in North Carolina, service of process upon the Secretary of State was proper, because his causes of action arise under all four sub-sections of G.S. 55-38.1(a).

G.S. 55-38.1(a) provides that "every foreign corporation shall be subject to suit in this State, by a resident of this State . . ., whether or not such foreign corporation is transacting or has transacted business in this State . . . on any cause of action arising as follows":

"(1) Out of any contract made in this State or to be performed in this State." Obviously this sub-section has no application, and plaintiff's brief argument that it does, need not detain us.

"(2) Out of any business solicited in this State by mail or otherwise, if the corporation has repeatedly so solicited business." This

sub-section is not relevant, and plaintiff cites no citation to support his contention and meager argument in respect thereto.

"(3) Out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers."

The word "goods" in its broad sense has a very extensive meaning, and "the term is generally understood to mean personal estate as distinguished from realty, and to embrace every species of property which is not real estate or freehold." 38 C.J.S., Goods, p. 940. In *Pippin v. Ellison*, 34 N.C. 61, the Court said: The term "goods" "embraces things inanimate—furniture, farming utensils, corn, etc., and 'chattels,' which term embraces living things—slaves, horses, cattle, hogs, etc." In *City of Blue Island v. Kozul*, 379 Ill. 511, 41 N.E. 2d 515, the Court said: "The magazines sold by the defendant would come within the terms 'goods, wares and merchandise' used in the ordinance."

It would seem that the language of G.S. 55-38.1(a), subsection (3), is broad and comprehensive enough to sustain the attempted service of process in this case, provided this section is constitutional as applied to the facts of this case.

In the recent case of *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, decided by the U. S. Court of Appeals for the Fourth Circuit on 7 November 1956, 239 F. 2d 502, the Court stated the question for determination is "whether or not (G.S.) 55-38.1(a)(3) may validly subject the appellee to the jurisdiction of North Carolina for a single sale consummated in New York 'with the reasonable expectation that those goods are to be used in (North Carolina) and are so used and consumed.'" The Court said: "We agree with the conclusion of the District Court that the North Carolina statute as applied to this case is invalid."

We have stated above that it is our opinion that the defendant has no contacts, ties, or relations with the State of North Carolina, so as to make it amenable to service of process from the Courts of the State for the purpose of a judgment *in personam.* In *International Shoe Co. v. Washington, supra,* the Court said: The due process clause of the U. S. Constitution "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations."

Although the due process clause of the U. S. Constitution as applied to the question of state jurisdiction over nonresidents for taxing purposes is not identical with the due process test for the exercise over them of state judicial power for the service of process, the two present a close parallel. *International Shoe Co. v. Washington, supra.* We,

therefore, deem relevant the case of *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 98 L. Ed. 744. In that case Miller Bros. Co., by its own truck or by common carrier, regularly delivered into Maryland the merchandise it had sold in Delaware. The Court held that under the due process clause the State of Maryland had no power, under the facts of the case, to impose a duty upon an out-of-state merchant to collect and remit the tax. In its opinion the Court said: ". . . due process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax."

In our opinion, under the facts found by the judge, G.S. 55-38.1(a), sub-section 3, is unconstitutional as applied to the facts of this case, because the defendant has, and had, no minimum connection with the State of North Carolina.

G.S. 55-38.1(a), subsection (4), is where the cause of action arises "out of tortious conduct in this State, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or non-feasance."

The magazines, designated *Official Detective Stories*, containing the article complained of by plaintiff, were brought into this State by independent contractors, by common carrier, and not by the defendant. Legal ownership and title to these magazines passed from the defendant to these independent contractors upon its delivery of these magazines to a common carrier in a foreign state. These magazines were put into circulation in North Carolina by these independent contractors, and not by the defendant. We agree with the conclusion of the judge below that plaintiff's cause of action did not arise out of any tortious conduct of the defendant in this State.

As regards nonresident individuals, it is settled by the decisions of the U. S. Supreme Court that a state has power to subject them to the jurisdiction of its courts as regards actions growing out of accidents or collisions on a highway within the state, in which the nonresident may be involved. *Kane v. New Jersey*, 242 U.S. 160, 61 L. Ed. 222; *Hess v. Pawloski*, 274 U.S. 352, 71 L. Ed. 1091. These decisions rest on the ground that "motor vehicles are dangerous machines; and even when skillfully and carefully operated, their use is attended by serious dangers to persons and property" (*Hess v. Pawloski, supra*), against which the state has a right to guard its residents.

In *Smyth v. Twin State Improvement Corp., supra,* it was held that jurisdiction over a foreign corporation may be acquired by virtue of a single tort committed within the state. The defendant, a builder and roofer by trade, endeavored to re-roof plaintiff's house in Rutland, Vermont, and put metal edgings on the sides thereof. While so doing, it negligently placed holes in the roof and sides of the building which caused it to leak with specified damage to plaintiff. In that case the

defendant was in the State of Vermont and committed the tort in the state.

In the instant case the defendant was not in the State of North Carolina, and had no minimum contacts with the State. To hold that G.S. 55-38.1(a), sub-section (4), applied to the facts of this case, would raise a serious question as to its constitutionality.

The facts found by the judge support his inferences, conclusions of law and judgment, with the exception that he erred in concluding that G.S. 55-38.1(a), sub-section (3), by its language did not apply, but he concluded correctly that if it did apply, it was unconstitutional as offending against the due process clause of the U. S. Constitution. No error of law appears on the face of the record.

The judgment below is
Affirmed.

JOHNSON, J., not sitting.

HIGGINS, J., concurs in result.