C. C. EDWARDS, Plaintiff,

v.

**SCOTT & FETZER, Inc.; Standard Vacuum Cleaner Manufacturing Co., George H. Scott, President, Carl S. Fetzer, Vice-President and Treasurer, John W. Franklin, Agent, Defendant.**

Civ. A. No. 294.

United States District Court
M. D. North Carolina,
Durham Division.

Aug. 9, 1957.

N. H. Godwin, Bryant, Lipton, Strayhorn & Bryant, Reade, Fuller, Newsom & Graham, Durham, N. C., for plaintiff.

Spears & Spears, Haywood & Denny, Durham, N. C., Davies, Eshner, Johnson & Miller, Cleveland, Ohio, for defendant.

HAYES, District Judge.

This is an action against an Ohio Corporation, its Ohio subsidiary, its President, Secretary-Treasurer and its Georgia agent to recover $120,000 which plaintiff expended as a guarantor of installment contracts sold by Henry Glenn to Fidelity Bank of Durham. The crucial questions on the motion of defendants to quash service and to dismiss is what type of connection or relation Henry Glenn of Durham or J. W. Franklin of Georgia bore to the defendant Scott and Fetzer Company.

This company manufactured and sold Vacuum Cleaners and attachments bearing its trade name "Kirby" in the following manner. It gave Franklin a region embracing a large portion of the Southern states to locate and recommend to it persons suitable for distributors of its product. The contract was in writ-

ing. At his expense he was to supervise and service such distributors as the company accepted and for his services he was paid $3 on each machine actually sold to the distributor. The territory for each distributor was specified and he could resell at wholesale or retail, the products only in his territory and at the company's retail price. Franklin had no authority to sell the products or to collect accounts or to otherwise act for or on behalf of the company.

Franklin located and recommended Henry Glenn for distributor in Durham, Person, Orange and Granville counties of North Carolina. The company accepted the recommendation and entered into a written contract with Glenn. He was made a distributor in this area to buy for cash or on C.O.D. with draft attached, F.O.B. Cleveland, Ohio at a fluctuating price per unit-flat $40 plus $10 each for first 18; plus $7 for 19 through 26; $5 each for 27 through 34, plus $2.50 for 35 through 42 and on 43 and over at the base price. The average was less than $50 per unit. The retail price was $123.45. All advertising and expenses of resale were borne by Glenn. The company had no control whatever over his methods or manner of sale except he nor anyone under him was allowed to sell them out of his territory nor at a less price than its designated retail price. He was given the patent and copyright privileges of selling the products and an agreement to save him harmless against any alleged infringement of other patents or trade names. Glenn was at liberty to sell for cash or on time and to adopt whatever name he saw fit but without any authority to act as agent or employee of the company or to incur any liability on its behalf. At no time did the company maintain any place of business in North Carolina or maintain parts or supplies for its products. It sold them outright to the distributor who paid for them before they came into his possession.

If the contract between them was cancelled, the company was to have the privilege of purchasing any new machines on hand at their cost price.

Glenn did a flourishing business between April 1, 1952 and Nov. 21, 1954, the effective date of cancellation. He adopted as his trade name "The Kirby Company". In order to pay cash for his purchases, he entered into a floor plan contract with C. C. Edwards by which Edwards was to put up $45 cash on each unit which was to be stored in a bonded warehouse; Glenn was to pay the balance of the purchase price and the title to the unit vested in Edwards; Glenn could withdraw the unit only by paying Edwards $50; not over 60 units were to be stored at one time and Glenn had to sell at least 30 units each month, thereby yielding a profit to Edwards of $150 per month on the use of $1,350 for thirty days.

The units were bought by Glenn under the terms of his contract with the company. He sold them under his trade name, The Kirby Company. Glenn sold them on a promissory note, secured by chattel mortgage for $151.31, payable in 12 monthly installments. Glenn and Edwards entered into another contract on Feb. 14, 1953 under the terms of which Edwards agreed to guarantee to the bank the payment of each mortgage note upon which he wrote "O.K. CCE". In consideration and payment for this endorsement, Edwards was to have 20% of the proceeds which was to be deposited simultaneously in the bank to the credit of C. C. Edwards, Special. About 3,000 contracts were handled in this manner until in the fall of 1954 when Glenn admitted that 660 of these purchase notes were either in fictitious names, forgeries or fraudulent. Edwards was forced to pay the bank its balance on these fraudulent notes. It is worthy of notice that all of Edwards' dealing with Glenn were with him only and on the theory that Glenn was becoming the absolute purchaser of the company's products the title to which vested in Glenn on payment of the cash price. As security for the $45 advanced by Edwards, Glenn's

title was transferred to Edwards, together with possession deposited in a bonded warehouse in the name of Edwards where it could not be removed without the authority of Edwards and by Glenn paying all storage charges. Moreover, Edwards required Glenn to move at least 30 units from the warehouse each month. After the company got its contract price for the unit, it had no title to it or control over it except the contract promise of Glenn to sell it in the named territory and at the company's retail price.

After the title to the machines passed from the company to Glenn, he was in full control of the ways and means of reselling them. It would appear more logically to say he was reselling them for Edwards, or Edwards and himself, than to say he was selling them as agent of the Company.

While there are affidavits by the bank employees as to methods of the Company and Byrd Distributing Co. in 1956 and for two years prior thereto, they do not change the facts as above stated relating to Glenn prior to Nov. 1954.

The evidence of the meeting held in Washington Duke Hotel, on July 18, 1956, at which time Franklin paid $81.07 for 23 luncheons and Scott and Fetzer Co. paid $282.50 for 50 dinners on order of John W. Franklin, at most shows the entertainment by the Company and Franklin of Company's distributors. It does not reach the requisite proof of showing that the Company was present doing business in this state or exercising control over its distributor. The mere entertainment of its distributors falls far short of exercising dominion or control over them.

The plaintiff contends that the Company was present in North Carolina and doing business in the State through Franklin and Glenn and Byrd Distributing Co. so as to subject the Company to the jurisdiction of the courts of this state, relying on North Carolina G.S. § 55–38.1, subdivision (2), (a) and (c), and on International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154,

90 L.Ed. 95 and Painter v. Home Finance Co., 245 N.C. 576, 96 S.E.2d 731 and Cape Fear Railways v. Cobb, 190 N. C. 375, 129 S.E. 828. However, these cases recognize that a mere distributor as such is not an agent. These authorities, when applied to the facts of this case, do not sustain plaintiff's contention.

We have here several important characteristics which differentiate the instant case from Kahn v. Maico Company, 4 Cir., 216 F.2d 233, 234 wherein Chief Judge Parker aptly observed that the "provisions of the contract and the evidence * * * show clearly that much more than sale and resale were involved and that the business of plaintiffs was in fact controlled and directed by defendant." Since the above case seems most nearly in point to the instant case, it will be noted in that case the defendant did certain things evidencing control which are lacking here: "Every sale was made on an order form provided by defendant, was reported to defendant and defendant wrote the purchaser with regard thereto. Advertisements were furnished and paid for by defendant under an arrangement which virtually precluded the use of other advertising by plaintiffs. * * * It arranged for purchasers from plaintiffs to finance their purchases through a company with which it contracted. It had its representatives to visit plaintiffs and advise and direct plaintiffs as to the management of their business. * * * Furthermore, there can be no doubt but that defendant actually participated in the sales made by plaintiffs, since the guaranty given in connection with the sale of a hearing aid was a part of the sale, and in making the guaranty the plaintiffs were unquestionably acting as agents of defendant * * * [and] in adjusting complaints made under the guarantees."

The facts here show that neither Franklin nor Glenn was local agent of any of the defendants. An agent through whom the corporation may be served with process is one who exercises some control over and discretionary power in respect to the corporate functions

of the company. He is one who stands in the shoes of the corporation in relation to the matters of the corporation committed to his care. He must represent it in a general or limited capacity. He is the alter ego of the corporation. The law of North Carolina is clearly stated in the recent case of Lambert v. Schell, 235 N. C. 21, 69 S.E.2d 11.

██ Painter v. Home Finance Co., 245 N.C. 576, 96 S.E.2d 731 is distinguishable from the Lambert case for the service in the Painter case was sustained because the company through its agent committed a tort in this state in the undisputed transaction for and on behalf of the company. It was the foreign corporation through its agent committing a tort in its behalf. But the Painter case is no authority for the plaintiffs here. The basis of plaintiff's case is damages he sustained by guaranteeing the payment of fraudulent notes to the Kirby Co. (Glenn) executed purportedly, not for Scott and Fetzer Co. but, for the mutual benefit of Edwards and Glenn. There is insufficient evidence to connect the transactions of Glenn in a direct or indirect manner as acting for or on behalf of Scott and Fetzer Co. in uttering forged purchase money notes for Vacuum cleaners belonging to the company. The service of process here is not valid because the cause of action did not arise from tortious conduct committed by defendants in this state.

██ The service of process can not be valid on the theory that the defendants were doing business in this state. Putnam v. Triangle Publications, 245 N. C. 432, 96 S.E.2d 445; Lambert v. Schell, supra; Harrington v. Croft Steel Products, 244 N.C. 675, 94 S.E.2d 803; Walker v. P. Ballantine and Sons, D.C., 149 F.Supp. 379; Harris v. Deere & Co., 4 Cir., 223 F.2d 161. They were neither here in person nor under the fiction of being here through the presence of an agent clothed with any authority or discretion. A mere salesman or broker who takes orders and sends them to a foreign corporation for acceptance or distributor who buys and takes title to the chattels is not a managing or local agent and does not result in the corporation doing business in this state. Heath v. Kresky Manufacturing Co., 242 N.C. 215, 87 S.E.2d 300; Erlanger Mills v. Cohoes Fibre Mills, 4 Cir., 239 F.2d 502; Radio Station WMFR, Inc., v. Eitel-McCullough, 232 N.C. 287, 59 S.E.2d 779.

██ It is not necessary to cite authority that the purported service individually on George Scott, President and Carl S. Fetzer, Vice-President and Treasurer is invalid. The statutes relating to foreign corporations have no application to individuals.

██ The service of process on John W. Franklin, agent, constitutes valid service on him individually. Plemmons v. Southern Imp. Co., 108 N.C. 614, 615, 13 S.E. 188; Blue Ridge Electric Membership Corp. v. Grannis Bros., 231 N.C. 716, 58 S.E.2d 748. But does not constitute service on the corporation as the Sheriff's return is not a final determination of his being an agent of the corporation. Cannon v. Time, Inc., 4 Cir., 115 F.2d 423. The complaint is sufficient to show a probable cause of action against Franklin for conspiring with Glenn to defraud plaintiff and in procuring Glenn to perpetrate the fraud and to plaintiff's injury. The allegations of the complaint are so general and interwoven with the corporate defendants and so vague and indefinite as to Franklin that the court in its discretion sustains the motion of Franklin to dismiss as to him, with leave to file within 30 days an amended complaint against him and will allow Franklin 20 days thereafter to plead to that complaint.

The service on the other defendants is invalid for the reasons assigned and quashed as to each defendant and the action dismissed, except as to defendant Franklin.

██ The attachment of the Vacuum Cleaners and parts in the custody of Hennis Bros., interstate carrier is void and of no effect. This shipment had

bills of lading attached requiring payment by consignee—Byrd Distributing Co.—before Hennis Bros. could release it from custody. The attachment was plainly prohibited by Title 49, Sec. 103 of U.S.C.A.