**William F. BUCKLEY, Jr., Plaintiff,**

v.

**NEW YORK POST CORPORATION, Defendant.**

**Civ. No. 10975.**

United States District Court
D. Connecticut.

June 10, 1966.

David S. Maclay, Marsh, Day & Calhoun, Bridgeport, Conn., for plaintiff.

Jacob D. Zeldes, Goldstein & Peck, Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The defendant, having removed this libel action from the state court, now moves to dismiss on the ground that it is a foreign corporation not subject to service of process in this state.[1]

The relevant Connecticut statute, Section 33–411 of the General Statutes,[2] contains a tripartite classification of foreign corporations on which "long arm" service is permitted. Section 33–411(a) is inapplicable because the defendant does not have a certificate of authority to do business in this state.

---

1. The motion is made pursuant to Rule 12 (b), Fed.R.Civ.P.

2. Conn.Gen.Stat. § 33–411 provides for service of process on foreign corporations

"(a) * * * authorized to transact business in this state
   *       *       *       *       *

(b) * * * which transacts business in this state in violation of section 33–395 or 33–396 * * * upon any cause of action arising out of such business.

(c) * * * whether or not such foreign corporation is transacting or has transacted business in this state * * * on any cause of action arising as follows:
   (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or
   (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

Conn.Gen.Stat. §§ 33–395, 33–396. Since the defendant does not transact sufficient business here, the plaintiff also concedes the inapplicability of Section 33–411(b).

The only jurisdictional grounds urged by the plaintiff, therefore, are Section 33–41(c)(3), the "distribution and use" provision, and Section 33–411(c)(4), the "tortious conduct" provision.

In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court invited broad assertions of personal jurisdiction over foreign corporations. No longer inhibited by the restrictive and mechanical tests of "doing business",[3] "corporate presence",[4] or "corporate consent",[5] several states—Connecticut among them—responded by passing long arm statutes. Connecticut's statute—while, perhaps, not stretching to the outer limits of constitutional permissibility, Southern New England Distrib. Co. v. Berkeley Fin. Co., 30 F.R.D. 43 (D.Conn. 1962)—is certainly extensive. Cf. Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 461 fn. 9, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); Sheridan v. Cadet Chemical Co., 25 Conn.Sup. 17, 195 A.2d 766 (Super.Ct. 1963).

In diversity cases such as this one a federal court may not exercise jurisdiction over a foreign corporate defendant unless the forum state has chosen to do so. Arrowsmith v. United Press International, 320 F.2d 219, 222 (2 Cir. 1963). The Court, therefore, first must look to the statute to determine whether Connecticut has purported to assert jurisdiction over the defendant. If it has, "then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution." Ibid. These constitutional boundary lines may

have been stretched, McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), but they have not been erased, Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and they cannot be ignored.

In the instant case the plaintiff is seeking compensation for injury to himself in both his private and business capacities resulting from two allegedly libelous editorials published by the defendant.

The defendant is a Delaware corporation which publishes the "New York Post". It is qualified to do business in New York and New Jersey, but not here. In this state it does not have any agent, salesman, officer, director, or employee; does not advertise; has no mailing address or telephone listing; owns no real or personal property; and keeps no bank account.

On both of the dates in question about 2,000 copies of the "Post", or ½ of 1 percent of the total daily circulation, were sold in Connecticut. These figures are typical of the paper's daily distribution here. Aside from an occasional news item from an independent contributor from Connecticut and a small percentage of advertising from local merchants, restaurants, and resorts, the defendant has no other contact with this state.

The question before the Court, then, is whether these activities establish a sufficient nexus between the defendant and Connecticut to sustain the extraterritorial service of process in this action for libel.

Plaintiff's first claim is that since newspapers are "goods", as that term is used in Section 33–411(c)(3), and since the defendant distributed them with the reasonable expectation they

3. Green v. Chicago, Burlington & Quincy R.R., 205 U.S. 530, 27 S.Ct. 595, 51 L. Ed. 916 (1907).

4. Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L. Ed. 710 (1917).

5. St. Clair v. Cox, 106 U.S. 350, 355–57, 1 S.Ct. 354, 27 L.Ed. 222 (1882).

would be read in Connecticut, it is amenable to suit under that section. Defendant admits that newspapers are "goods" for some purposes—such as for the purpose of a statute prohibiting the sale of goods on Sunday—and may also be considered goods within the purview of 33–411(c) (3) for some causes of action—such as suits for injuries resulting from defective newsprint or from being struck by a bundle of newspapers. But it denies that newspapers are "goods" for the purposes of a libel action. It argues that the claim arises, not out of the distribution of newspapers, but out of the *communication of* the alleged defamatory statements and that "(n)either a libel nor defamatory words can be considered 'goods' by any stretch of the imagination."

The only court which previously has considered a similar argument has rejected it. In the absence of any legislative indication to the contrary this Court must agree with the North Carolina Supreme Court that the word "goods" has a very extensive meaning and embraces every species of property which is not real estate, Putnam v. Triangle Publications, Inc., 245 N.C. 432, 442, 96 S.E.2d 445 (1957), except, perhaps, choses in action, investment securities, and the like. Conn.Gen.Stat., Uniform Commercial Code, § 42a–2–105(1). Furthermore it would be too strained an interpretation to distinguish solely on the basis of the word "goods" between the products liability situation in which, for example, a nail is concealed in an unopened can of peas, and the libel situation in which the defamatory words lie dormant in an unread newspaper. Neither cause of action arises until some further act occurs. The former situation requires the consumption of the peas; the latter, the communication of the words. Defendant admits the one would come within the statute; it cannot reasonably deny the other.

There being no question that the newspapers were distributed with the reasonable expectation they would be read here, the plaintiff's suit comes within the comprehensive language of (c) (3), provided that section is constitutional as applied to the facts of this case.

In order to subject a foreign corporation to a binding *in personam* judgment, due process requires that it have certain "minimum contacts" with the territory of the forum, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". International Shoe Co. v. State of Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158.

Among the "traditional notions of fair play" is a past and continuing judicial reluctance to expand personal jurisdiction over out-of-state publishers in libel actions in the absence of substantial activity within the forum state. In limiting the forums available to an allegedly libeled plaintiff, the courts undoubtedly have been influenced by the potential restrictions on informed public discussion which might result from extraterritorial jurisdictional claims. See, Comment, Newspaper Libel—Barriers to Expanding Personal Jurisdiction, 29 U.Chi. L.Rev. 569, 584 (1962). If the law of libel represents an effort to balance the competing policies favoring freedom of the press and protection of reputation, cf. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), Walker v. Savell, 335 F.2d 536 (5 Cir. 1964), First Amendment considerations necessarily find their way into the jurisdictional assessment. Buckley v. New York Times Co., 338 F.2d 470 (5 Cir. 1964); Walker v. General Features Corp., 319 F.2d 583 (10 Cir. 1963); Insull v. New York World-Telegram Corp., 273 F.2d 166 (7 Cir. 1959); Putnam v. Triangle Publications, Inc., supra; Schmidt v. Esquire, Inc., 210 F.2d 908 (7 Cir.) cert. denied, Schmidt v. Crowell-Collier Pub. Co., 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954); Gayle v. Magazine Management Co., 153 F.Supp. 861 (M.D.Ala. 1957); Brewster v. Boston Herald-Traveler Corp., 141 F.Supp. 760 (D.Me.1956). To reiterate the reasoning of these cases would serve no useful purpose. It need

only be noted that in the *Putnam* case, the court construed a provision of the North Carolina long arm statute identical to subsection (c) (3). It found it to be unconstitutional as applied to facts similar to those in the instant case because the defendant had no minimum connection with that state.

The judicial barrier to expanded jurisdiction in libel actions has not gone unchallenged. In Roy v. North American Newspaper Alliance, Inc., 106 N.H. 92, 205 A.2d 844 (1964), the court rejected the distinction between libel and other suits. In so doing it stated:

> [S]o long as malicious defamation remains a tort, it should be given constitutional protection even in its present limited and attenuated context. (citations omitted) While not conclusive, the equities and convenience of trial designate this state as a just and fair forum because its law applies and because the crucial witnesses will for the most part be from within this state.

205 A.2d at 848.

See also D. Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 533, 553–54 (1964); cf. Note, Developments in the Law, State Court Jurisdiction, 73 Harv.L.Rev. 909, 928–930 (1960). However, as Professor James has said in discussing Hanson v. Denckla, supra:

> The principal significance of *Denckla* is probably that the Court still insists on minimum contacts *between the state and the non-resident*. It is not enough that the subject matter of the action has ample connection with the forum state; nor that the balance of convenience favors it. This means that the Court was not willing to equate jurisdiction with either the choice-of-law problem or with the doctrine of forum non conveniens. A state court "does not acquire * * * jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation." Restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are consequences of territorial limitations on the power of the respective states." So the requirement of power seems to be with us still * * * (Footnotes omitted)

James Civil Procedure, 643 (1965).

This Court recognizes the legitimacy of both points of view but is constrained to follow the traditional limitation on state power over out-of-state publishers. The choice is made easier by the lack of substantial commercial contacts or significant activities which might otherwise make it fair and just to subject the defendant to suit here.

■ As applied to the facts of this case then, Section 33–411(c) (3) is unconstitutional and will not support jurisdiction.

■ The only remaining question is whether jurisdiction is proper under subsection (c) (4) which allows substituted services over a non-domiciliary for causes of action arising out of "tortious conduct in this state." Although there is a split of authority on the proper interpretation of that phrase as applied to non-libel causes of action, both outside of this state [6] and within it,[7] its applicability to libel actions has been limited. Insull v. New York World-Telegram Corp., supra; Putnam v. Triangle Publications, Inc., supra.[8] In these

---

6. Compare Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961) and O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 194 A.2d 568 (1963), with Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc. (Feathers v. McLucas), supra.

7. Compare Sheridan v. Cadet Chemical Corp., supra, with Southern New Eng. Distrib. Co. v. Berkeley Fin. Co., supra.

8. The contrast between libel and non-libel actions can be seen by comparing these cases with others in the same state. See, e. g., Shephard v. Rheem Mfg. Co.,

cases the place of tortious conduct has been held to be the place where the newspaper was published. In line with these cases and in light of the preceding discussion of subsection (c) (3) the Court holds the fact of injury *to reputation* without more will not sustain the jurisdictional claim under subsection (c) (4).

Accordingly, the defendant's motion to dismiss is granted.

249 N.C. 454, 106 S.E.2d 704 (1959) (hot water heater explosion); Gray v. American Radiator & Standard Sanitary Corp., supra (defective valve explosion). The New York legislature specifically excluded defamation cases against out-of-state publishers from the reach of its statute, N.Y.Civ.Prac.L. & R. § 302(a) (2) (1963), although there is no indication that the Connecticut legislature in passing Section 33–411 confronted this distinction between libel and non-libel cases.